**2023 IL 127538**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 127538)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
LANCE M. DAVIDSON, Appellant.

*Opinion filed January 20, 2023.*

JUSTICE O'BRIEN delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Neville, Overstreet, and Holder White concurred in the judgment and opinion.

Justices Cunningham and Rochford took no part in the decision.

**OPINION**

¶ 1    The State charged defendant, Lance M. Davidson, in the circuit court of Montgomery County with aggravated battery in violation of section 12-3.05(d)(4)(i) of the Criminal Code of 2012 (Code) (720 ILCS 5/12-3.05(d)(4)(i) (West 2018)). A jury found defendant guilty, and the court sentenced him to a term of 3½ years' imprisonment. He appealed, arguing that the State failed to prove him

guilty beyond a reasonable doubt because the State failed to present any evidence that his conduct insulted or provoked the victim. The appellate court affirmed (2021 IL App (5th) 190217-U), and we allowed defendant's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Oct. 1, 2020). For the following reasons, we affirm the appellate court's judgment.

¶ 2                                        BACKGROUND

¶ 3        The State charged defendant by information with aggravated battery (720 ILCS 5/12-3.05(d)(4)(i) (West 2018)). The information alleged that on March 28, 2018, defendant knowingly, without legal justification, pushed Correctional Officer Jim Stitt in the chest with his hands, knowing Officer Stitt to be a correctional institution employee engaged in the execution of his official duties.

¶ 4        At a jury trial, Officer Stitt testified that on March 28, 2018, he was employed and on duty at the Montgomery County Jail. Officer Stitt was stationed in the booking area when he heard loud banging coming from the hallway. He went into the hallway and noticed that a dry erase board had been knocked off the wall. Officer Stitt proceeded down the hallway to the "North Day 2" area.

¶ 5        As Officer Stitt approached North Day 2, he observed defendant standing directly behind the door, looking out the window while screaming and swearing. Officer Stitt explained that any yelling or screaming at the jail needed to be stopped immediately to reduce the likelihood of escalation among the inmates. Officer Stitt asked defendant to explain the situation, but defendant continued to scream and swear. Officer Stitt told defendant to calm down. Defendant refused to stop, so Officer Stitt informed him that he would be placed on lockdown. Defendant refused to comply and told Officer Stitt he "would have to make [him] go on lock down."

¶ 6        Officer Stitt called dispatch to open the cell door. He stepped inside the cell and told defendant he would be placed on lockdown. Defendant ran to the other side of the cell when Officer Stitt stepped toward him. As Officer Stitt moved toward defendant, defendant jumped across the table in the cell. Officer Stitt stepped over to block defendant from running back across the cell. Defendant pushed out his hands and shoved Officer Stitt in the chest, which caused Officer Stitt to take a step

backwards. However, Officer Stitt managed to spin defendant around, lock his arms, and escort him into his individual cell for lockdown.

¶ 7 Officer Stitt was not physically injured by defendant. Officer Stitt did not testify that he felt insulted or provoked by defendant's push. He also did not testify as to any outward reaction he made in response to defendant's actions. However, Officer Stitt knew that defendant had recently returned from court. Officer Stitt believed that something must have happened in court that made defendant upset because defendant's behavior started after he returned from court.

¶ 8 Defendant testified on his own behalf. Defendant admitted to yelling and swearing because he learned in court that he would not be released from prison that day. This, combined with family problems, caused defendant to act out. Defendant denied hitting Officer Stitt but admitted to running away from Officer Stitt and refusing lockdown.

¶ 9 Ultimately, the jury found defendant guilty of aggravated battery. The trial court sentenced defendant to 3½ years' imprisonment.

¶ 10 On appeal, defendant argued that the State failed to prove him guilty beyond a reasonable doubt. 2021 IL App (5th) 190217-U, ¶ 12. Defendant contended that the State failed to present evidence that Officer Stitt was insulted or provoked by the contact. *Id.* The appellate court affirmed, noting that it was not necessary for a victim to testify that he was insulted or provoked. *Id.* ¶ 15 (citing *People v. Wrencher*, 2011 IL App (4th) 080619, ¶ 55). The court explained that the trier of fact must consider the context of defendant's conduct when determining whether the contact was insulting or provoking. *Id.* (citing *People v. Fultz*, 2012 IL App (2d) 101101, ¶ 49).

¶ 11 The appellate court found that the physical contact in this case was precipitated by defendant's intentional disregard of Officer Stitt's verbal command to lock down and subsequent taunting of Officer Stitt by his statement that Officer Stitt would have to " 'make him' " go into lockdown. *Id.* ¶ 16. The court concluded that defendant amplified the situation by moving directly toward Officer Stitt and contacting Stitt with the intention of avoiding capture and lockdown. *Id.* In this context, the court concluded that it would be reasonable for the jury to infer that defendant's act of defiance was insulting. *Id.* The court also explained that it would

be equally reasonable for the jury to infer that defendant's escalation to physical contact would be considered as provoking Stitt into a physical altercation. *Id.*

¶ 12                                         ANALYSIS

¶ 13    In this court, defendant maintains that the State failed to prove his guilt beyond a reasonable doubt for the offense of aggravated battery. The narrow issue in this appeal involves the parties' dispute regarding the proof required to establish defendant made "physical contact of an insulting or provoking nature with" Officer Stitt. See 720 ILCS 5/12-3(a) (West 2018)). Defendant contends the State must present evidence proving Officer Stitt subjectively found the physical contact insulting or provoking. By contrast, the State asserts that it need only present evidence that a reasonable person under the circumstances would have found the physical contact insulting or provoking. This is a question of statutory interpretation, which we review *de novo*. *In re Jarquan B.*, 2017 IL 121483, ¶ 21.

¶ 14    The primary objective of statutory interpretation is to ascertain and give effect to the General Assembly's intent. *People v. Pearse*, 2017 IL 121072, ¶ 41. The best indicator of legislative intent is the plain and ordinary meaning of the statutory language. *In re Hernandez*, 2020 IL 124661, ¶ 18. When the statute is clear and unambiguous, we will apply it as written without resort to aids of statutory construction. *People v. Williams*, 2016 IL 118375, ¶ 15.

¶ 15    The relevant statutory provisions provide that a person commits aggravated battery when, "in committing a battery, *** he or she knows the individual battered to be *** [a] correctional institution employee *** performing his or her official duties." 720 ILCS 5/12-3.05(d)(4)(i) (West 2018). A person commits a battery if "he or she knowingly without legal justification by any means *** makes physical contact of an insulting or provoking nature with an individual." *Id.* § 12-3(a).

¶ 16    We find the clear and unambiguous language of section 12-3(a) of the Code demonstrates that the question of whether the contact is insulting or provoking is an objective inquiry. The use of the noun "nature" after the adjectives "insulting" and "provoking" means that those terms describe the requisite "nature" of the contact, taking it outside the scope of the victim's subjective view. The plain meaning of "nature" in this context reflects an intent to look outside the victim's

viewpoint and to that of a reasonable person's perspective. Put another way, it is the nature of the contact, not the actual impact on the victim, that must be established. Consequently, we hold that the trier of fact is asked to determine whether a reasonable person under the circumstances would find the physical contact insulting or provoking in nature. See *e.g.*, *People v. Williams*, 2020 IL App (4th) 180554, ¶ 50.

¶ 17     The legislature could have, but did not, expressly provide that an individual's physical contact must cause a victim to feel insulted or provoked. Had the legislature intended this, it would have used the same language it used when defining battery involving bodily harm. Battery involving bodily harm is committed if the individual knowingly "*causes* bodily harm to an individual." (Emphasis added.) 720 ILCS 5/12-3(a) (West 2018). Battery involving insulting or provoking contact, however, is committed if the individual knowingly "makes physical contact of an insulting or provoking *nature* with an individual." (Emphasis added.) *Id.* By defining the first type of battery in terms of the result of the action and the second by the nature of the action, the legislature expressed an intention to distinguish the two forms of battery. Therefore, whether the victim subjectively found the contact insulting or provoking is not necessary to establish that defendant committed this form of battery.

¶ 18     To hold otherwise would lead to absurd results. There are many reasons why a victim may not display an emotional reaction or deny being insulted or provoked. For example, "[v]ictims of domestic violence might not show outward emotion because of stoicism, fear of reprisal, pride, shame, humiliation, or even feelings of guilt and self-loathing." *People v. Ward*, 2021 IL App (2d) 190243, ¶ 102 (Zenoff, J., concurring in part and dissenting in part). Similarly, such a holding would foreclose prosecution in cases where an unconscious victim is physically contacted in an insulting or provoking way. *Williams*, 2020 IL App (4th) 180554, ¶ 51. There may also be instances where the victim is unable to comprehend or understand if certain contact is insulting or provoking. And in the instance case, Officer Stitt testified that any yelling or screaming at the jail needs to be stopped immediately to reduce the likelihood of escalation among the inmates, so it is certainly understandable that a correctional officer would try to limit any outward reaction to behavior like defendant's for the same reason. Applying a reasonable person

standard is consistent with the plain language of the statute and avoids absurd results.

¶ 19   With the above interpretation in mind, we address the split in our appellate court districts concerning whether the victim must subjectively find the contact insulting or provoking. The court in *Williams* held that that an objective, reasonable person standard applied. *Id.* ¶ 50. The *Ward* court, which defendant relied upon in support of his argument, held that the State must prove that the victim subjectively found the contact insulting or provoking. *Ward*, 2021 IL App (2d) 190243, ¶ 50. The decision in *Ward* is flawed for several reasons. First, the *Ward* court's analysis is inconsistent with the plain language of the statute. Second, the *Ward* court determined that focusing on the nature of the contact under a reasonable person standard precluded a consideration of the context in which the contact occurred. *Id.* ¶ 52. The *Ward* court was under the mistaken assumption that the reasonable person standard limited the trier of fact's consideration to only the type of physical contact that occurred without consideration of the context. The opposite is true. "Nature" is defined, in relevant part, as "a kind or class usually distinguished by fundamental or essential characteristics." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/nature (last visited Jan. 10, 2023) [https://perma.cc/H359-75SM]. Determining the "essential characteristics" of the physical contact requires a consideration of the surrounding context. To the extent the appellate court in *Ward* held that the inquiry is a subjective question, that decision is overruled. See *Ward*, 2021 IL App (2d) 190243, ¶ 50.

¶ 20   Defendant also calls our attention to the decisions in *Fultz*, 2012 IL App (2d) 101101, *Wrencher*, 2011 IL App (4th) 080619, *People v. DeRosario*, 397 Ill. App. 3d 332 (2009), *People v. Peck*, 260 Ill. App. 3d 812 (1994), *People v. d'Avis*, 250 Ill. App. 3d 649 (1993), and *People v. Dunker*, 217 Ill. App. 3d 410 (1991). He contends these decisions demonstrate that nearly every case construing the phrase "insulting or provoking" agrees the statute requires evidence that the victim finds the contact insulting or provoking. We disagree; the court in these decisions was not asked to determine whether the victim must subjectively feel insulted or provoked by the contact, so any reliance on these cases for that proposition is misplaced.

¶ 21    Additionally, we believe that defendant's reading of *d'Avis*, *Peck*, and *DeRosario* is too broad. These decisions all stand for the proposition that the context must be considered when determining if the contact was insulting or provoking in nature, which is true under the reasonable person standard. Notably, the court in these decisions focused the analysis on the nature of the physical contact without mention of the victim's subjective reaction. See *d'Avis*, 250 Ill. App. 3d at 651 ("Thus, it was perfectly reasonable for the trial court to have found that the otherwise noninsulting medical procedure performed on Lopez became an insulting and provoking contact once Lopez realized that d'Avis was using the rectal examination as a vehicle to bring about his own sexual gratification."); *Peck*, 260 Ill. App. 3d at 814-15 ("Although we can envision contexts in which a defendant's spitting might not constitute insulting or provoking behavior, defendant's spitting in the face of a police officer in this case clearly amounts to insulting or provoking contact."); *DeRosario*, 397 Ill. App. 3d at 334 ("[T]he trial court reasonably concluded that defendant intentionally sat where he was bound to come in contact with the victim and that he knew that this conduct would provoke her.").

¶ 22    We acknowledge that the court in *Wrencher*, *Fultz*, and *Dunker* considered the context of the physical contact in terms of its subjective effect on the victim. See *Wrencher*, 2011 IL App (4th) 080619, ¶ 55 ("The victim does not have to testify he or she was provoked; the trier of fact can make that inference from the victim's reaction at the time." (citing *Dunker*, 217 Ill. App. at 415)); *Fultz*, 2012 IL App (2d) 101101, ¶ 50 ("The jury could also have reasonably inferred that Horton was insulted and/or provoked where he reacted by pushing defendant aside."). However, the defendants in these decisions never raised this issue, and the court proceeded under the assumption that the State must prove the victim subjectively found the contact to be insulting or provoking. To the extent those decisions can be read as requiring the State to prove the victim was insulted or provoked by the contact, those decisions are overruled.

¶ 23    Having found that the State must prove that a reasonable person would find the physical contact insulting or provoking, this court need not address defendant's additional argument that the evidence in this case was insufficient. His argument is based on his belief that the State must prove that the victim subjectively found the physical contact insulting or provoking. Since we have rejected defendant's

interpretation, we need not address this argument. We therefore affirm the appellate court's decision affirming defendant's conviction and sentence.

¶ 24                                CONCLUSION

¶ 25    The State is not required to prove that a victim of a battery subjectively felt insulted or provoked by the contact. Instead, the State need only prove that a reasonable person would have felt insulted or provoked by the physical contact. Accordingly, we affirm the judgment of the appellate court affirming defendant's conviction and sentence.

¶ 26    Affirmed.

¶ 27    JUSTICES CUNNINGHAM and ROCHFORD took no part in the consideration or decision of this case.