2023 IL App (1st) 221452-U

No. 1-22-1452

Order filed October 20, 2023

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 20 CR 60025 |
| | ) | |
| RONALD BURGE, | ) | Honorable |
| | ) | Ursula Walowski, |
| Defendant-Appellant. | ) | Judge presiding. |

JUSTICE NAVARRO delivered the judgment of the court.
Justices Mikva and Lyle concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm defendant's convictions for aggravated battery and official misconduct where there was sufficient evidence to convict him of the offenses.

¶ 2    Following a jury trial, defendant Ronald Burge was found guilty of two counts of aggravated battery and one count of official misconduct. The trial court subsequently sentenced him to two years' probation. On appeal, defendant contends that the State failed to present sufficient evidence to convict him of any of the offenses. For the reasons that follow, we affirm.

¶ 3                                I. BACKGROUND

¶ 4    A grand jury indicted defendant on several counts of aggravated battery, official misconduct and disorderly conduct. The State proceeded to trial against him on four counts of aggravated battery and one count of official misconduct. Count 2 alleged that defendant committed aggravated battery by striking Carla Bourgouis' head against a wall while on public property. Count 4 alleged that defendant committed aggravated battery by striking Bourgouis' head against a wall while knowing she was 60 years of age or older. Count 5 alleged that defendant committed official misconduct by committing a battery while in his capacity as a police officer. Count 8 alleged that defendant committed aggravated battery by dragging Bourgouis with his arm across her neck and chest with her feet at times dangling off the ground while on a public way or public property. Count 9 alleged that defendant committed aggravated battery by dragging Bourgouis with his arm across her neck and chest with her feet at times dangling off the ground knowing she was 60 years of age or older.

¶ 5    The case proceeded to a jury trial, where Bourgouis was the State's sole witness. She testified that, on October 5, 2019, she was 5-feet, 1-inch tall, weighed approximately 112 pounds and was 65 years old. That morning, Bourgouis saw her brother-in-law outside her house. When he refused to leave, Bourgouis called the Dixmoor Police Department. Sergeant Villegas and Officer Thomas responded. Instead of removing Bourgouis' brother-in-law, Sergeant Villegas and Officer Thomas got into an argument with one of her grandsons, Kajuan. The argument escalated, and as Bourgouis grabbed Kajuan while Sergeant Villegas and Officer Thomas were trying to arrest him, they all fell into a ditch. Ultimately, the officers arrested Kajuan.

¶ 6    Bourgouis and her daughter, Mia, who was Kajuan's mother, went to the Dixmoor police station to find out why Kajuan had been arrested, but, according to Bourgouis, they were not able

to speak to anyone. Video evidence admitted and played at trial, however, showed Bourgouis and Mia discussing the incident with Officer Thomas and Sergeant Villegas. Bourgouis left the police station, and when she returned, Mia was there along with Javaris Sr., Kajuan's father, and three children, two of which were Bourgouis' grandchildren and one of which was Javaris Sr.'s child.

¶ 7    While in the lobby, defendant appeared and discussed the incident with Bourgouis. According to her, defendant was "upset" that he had to come to the police station on his day off. While they were talking, Javaris Sr. was recording the encounter with his cell phone, which defendant asserted was illegal. Defendant gave Javaris Sr. an ultimatum to either give him the phone or be arrested. Javaris Sr. chose the latter. Still, defendant attempted to retrieve the phone, but the family passed it amongst each other with Javaris Sr. eventually getting it back. Video evidence was consistent with Bourgouis' testimony. As defendant began to lead Javaris Sr. out of the lobby and into the non-public area of the police station, Bourgouis started recording with her phone. Bourgouis followed them toward the door separating the lobby and non-public area, which indicated the non-public area was restricted. She propped the door open, though did not cross the door's threshold, and continued recording. Defendant immediately yelled "whoa, whoa, whoa," which prompted Bourgouis to run out of the police station. She crossed West 145th Street, which was adjacent to the station, and ran into a parking lot, all in an effort to keep her phone. At trial, Bourgouis denied that she heard defendant telling her to stop or that she was under arrest. Video evidence, however, showed that defendant yelled to her that she was under arrest as she ran out of the station.

¶ 8    Video evidence further showed defendant chase after Bourgouis with Sergeant Villegas, Mia and the three children all running outside. After Bourgouis ran into the parking lot, she paused behind various vehicles. While behind those vehicles, and out of view of the security camera,

defendant caught up to her. Shortly after, Mia, the three children and Sergeant Villegas all disappeared behind the vehicles in the parking lot. According to Bourgouis, once defendant caught her, he took out his firearm and grabbed her around the chest and neck. Video evidence showed defendant with his left arm around Bourgouis and a firearm in his right hand and pointed toward the ground a couple of feet into West 145th Street. As this occurred, Mia and the three children can be seen yelling at defendant with Sergeant Villegas right by them while a black SUV drove slowly toward them. As the vehicle drove near them, defendant dragged Bourgouis closer toward the middle of West 145th Street. The vehicle slowed down and briefly stopped several feet in front of defendant and Bourgouis with Sergeant Villegas, Mia and the three children all congregated around it. Although Bourgouis testified that her family was yelling at defendant, she denied that any of them threatened him. Once the vehicle left the scene, Officer Thomas came outside and walked toward defendant. Bourgouis testified that neither she nor anyone else with her was armed with a weapon.

¶ 9    According to Bourgouis, defendant then lifted her off of her feet and dragged her to the backdoor of the police station. Video evidence showed defendant drag Bourgouis several feet to the backdoor of the police station with his left arm around her neck and with a firearm in his right hand while, at times, her feet dangled off of the ground. While defendant dragged Bourgouis, the rest of her family members remained by the parking lot. At the backdoor of the police station, defendant pinned Bourgouis against the door with his body. According to Bourgouis, due to defendant's conduct, she was "losing [her] breath" and trying to prevent herself from being "choked to death." Video evidence showed Mia approach the backdoor of the police station yelling at defendant and forcibly walking within inches of him while being restrained by Sergeant Villegas with Officer Thomas at his side. A dispatcher opened the backdoor, and defendant dragged

Bourgouis inside with his arm still around her neck. Video evidence showed defendant give his firearm to the dispatcher. According to Bourgouis, after taking a few steps down a hallway, defendant pinned her against a wall and "bashed" her face against the wall multiple times. Defendant then swung Bourgouis around and pushed her against a counter on the opposite side of the hallway. Video evidence was generally consistent with Bourgouis' testimony. At trial, Bourgouis denied being aggressive toward defendant, or ever hitting or scratching him

¶ 10     In the defense's case, defendant testified that he was 33 years old, 6-feet tall and weighed between 235-240 pounds. On October 5, 2019, defendant was a commander with the Dixmoor Police Department but off duty. Sergeant Villegas called him into work because he and Officer Thomas had been attacked while responding to a call. After defendant arrived, he came into the lobby where Bourgouis, Mia, Javaris Sr., and the three children were located. Defendant spoke with Bourgouis, who claimed that Sergeant Villegas had been aggressive with her. While there, defendant received a text message alerting him that Javaris Sr. was livestreaming the interaction at the police station on Facebook. According to the text message, in the livestream, Javaris Sr. told people that the police had attacked Kajuan and viewers were asking for the address of the police station as well as commenting "[w]e're going to come up there" and "f*** that fat [officer]." Defendant told Javaris Sr. to stop recording and that it was illegal, but he refused. At trial, although defendant conceded it was not illegal to record police officers performing their duties, he claimed that it was illegal to record in secure areas of the police station.

¶ 11     Defendant told Javaris that he would have to take him into custody and attempted to take possession of the phone, but the family members passed the phone around. Eventually, Javaris Sr. re-took possession of the phone, and defendant walked him out of the lobby through a door and into the non-public area of the police station. According to defendant, that door had a sign stating:

"Do not open. Authorized personnel only." As defendant brought Javaris Sr. back into the non-public area of the police station, defendant noticed Bourgouis recording him at the threshold of the door. Defendant told Bourgouis to give him the phone and that she was under arrest, but Bourgouis ran out of the police station.

¶ 12    Defendant chased after her because she disobeyed a lawful arrest order, and when he approached her behind vehicles in the parking lot, he tried to grab her shoulder. As he reached for Bourgouis, she punched him and dug her nails into his groin area. Defendant was able to get ahold of Bourgouis and walked into West 145th Street with her. After walking into the street, he drew his weapon because her family members had begun to make gang signs, yell gang slurs and flagged down an SUV. According to defendant, the family members also tried to run toward him with Mia yelling at him to get off Bourgouis. At trial, defendant explained: "I not only feared for my life and safety, but also hers and the other officers outside after I drew my sidearm and put it at my side." Although he drew his firearm, he did not lift it or point it anyone. According to defendant, he told Bourgouis to walk, but she resisted by trying to scratch him and grab his groin area. Defendant had to "restrain" her with his hands because he did not have handcuffs, which he did by the shoulder, not the neck. As they began to walk back to the police station, Bourgouis "lifted her legs bending her knees trying to throw [him] off balance." Once inside the police station, defendant gave his firearm to a dispatcher because Bourgouis broke his holster. In the hallway, defendant applied "pressure point technique[s]," which he had learned at the Illinois State Police academy, on her shoulder and below her earlobe to help subdue her. While performing the one near her earlobe, Bourgouis' body jerked and her head bumped the wall. Bourgouis continued to resist in the hallway before defendant was able to get her into a holding cell with Javaris Sr.

¶ 13 Following closing arguments, the jury found defendant guilty of the two counts of aggravated battery based on being on a public way or public property, and one count of official misconduct, but not guilty of the two counts of aggravated battery premised upon knowing that Bourgouis was 60 years of age or older. Following defendant's unsuccessful motion for new trial, the trial court sentenced him to two years' probation.

¶ 14 This appeal followed.

¶ 15 II. ANALYSIS

¶ 16 Defendant challenges the sufficiency of the evidence to convict him of both aggravated battery offenses and official misconduct. When a defendant challenges the sufficiency of the evidence against him, we must determine whether, when the evidence is viewed in the light most favorable to the State, a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. *People v. Jackson*, 2020 IL 124112, ¶ 64. Under this standard of review, the jury has the responsibility to weigh the evidence, resolve conflicts in the evidence and to draw rational inferences from the evidence. *Id.* The reviewing court does not retry the defendant, and thus, we do not substitute in our judgment for that of the trier of fact on issues affecting the credibility of witnesses or the weight of the evidence. *Id.* We will not reverse a defendant's conviction "unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *Id.*

¶ 17 A. Count 2 – Aggravated Battery

¶ 18 For Count 2, where the jury found that defendant committed aggravated battery by striking Bourgouis' head against a wall while on public property, the State had to prove that defendant committed a battery and that he was on public property. 720 ILCS 5/12-3.05(c) (West 2018). Defendant correctly does not contest that a police station, as property owned by the government,

constitutes public property. See *People v. Castillo*, 2022 IL 127894, ¶ 28. In turn, his guilt for Count 2 turns on whether he committed a battery. "A person commits battery if he *** knowingly without legal justification by any means *** makes physical contact of an insulting or provoking nature with an individual." 720 ILCS 5/12-3(a)(2) (West 2018). Defendant argues that the State failed to present sufficient evidence that he knew his conduct would result in an insulting or provoking contact to her. Defendant posits that his act of applying a pressure point technique on Bourgouis was not the type of conduct that a person would be consciously aware was practically certain to result in an insulting or provoking contact.

¶ 19    "A person knows, or acts knowingly or with knowledge of:

> (a) The nature or attendant circumstances of his or her conduct, described by the statute defining the offense, when he or she is consciously aware that his or her conduct is of that nature or that those circumstances exist. Knowledge of a material fact includes awareness of the substantial probability that the fact exists.
>
> (b) The result of his or her conduct, described by the statute defining the offense, when he or she is consciously aware that that result is practically certain to be caused by his conduct." 720 ILCS 5/4-5 (West 2018).

"Knowledge may be, and ordinarily is, proven circumstantially." *People v. Ortiz*, 196 Ill. 2d 236, 260 (2001). Thus, the defendant's knowledge can be inferred from the surrounding circumstances and facts. *People v. Monteleone*, 2018 IL App (2d) 170150, ¶ 26. Whether a defendant acted knowingly is a question of fact for the jury to determine. *Id.* Additionally, whether physical contact is of an insulting or provoking nature "is an objective inquiry." *People v. Davidson*, 2023 IL 127538, ¶ 16. In other words, "it is the nature of the contact, not the actual impact on the victim, that must be established." *Id.* To this end, "the trier of fact is asked to determine whether a

reasonable person under the circumstances would find the physical contact insulting or provoking in nature." *Id.*

¶ 20    In the instant case, based on the video evidence and Bourgouis' testimony, there was evidence that defendant was consciously aware that his conduct would result in Bourgouis' head striking the wall multiple times. Defendant claims that his physical contact with Bourgouis was not done knowingly where he applied a pressure point technique that caused her head to involuntarily jerk and hit the wall, seeming to imply that her head struck the wall only once. "By electing to testify, defendant became bound to provide a reasonable account of events or be judged by their improbabilities and inconsistencies." *People v. Peterson*, 171 Ill. App. 3d 730, 735 (1988). The jury rationally rejected defendant's explanation. Moreover, given the significant size and age disparity between Bourgouis and defendant, the jury could rationally disbelieve that defendant needed to use a pressure point technique against her. See *People v. Sullivan*, 366 Ill. App. 3d 770, 782 (2006) (the jury may "accept or reject as much or as little of a witness's testimony as it pleases"). Given that the jury found defendant acted knowingly and the State's evidence supported that finding, we have no basis to overrule the jury's determination on this question of fact. See *Monteleone*, 2018 IL App (2d) 170150, ¶ 26. And, based on the circumstances, when defendant pushed Bourgouis' head into the wall multiple times in the hallway of a police station, a reasonable person under the circumstances would find that physical contact insulting or provoking in nature. See *Davidson*, 2023 IL 127538, ¶ 16.

¶ 21    Nevertheless, defendant likens his actions to those of the defendant in *People v. Martino*, 2012 IL App (2d) 101244. In that case, the defendant was charged with aggravated domestic battery after he broke his wife's arm when he fell on top of her after being tased. *Id.* ¶ 1. After the trial court found the defendant guilty, he appealed, where the issue was whether he acted

intentionally or knowingly. *Id.* ¶¶ 13-14. This court found that the defendant did not act intentionally or knowingly because the police's act of tasing him "rendered [him] incapable of controlling his muscles." *Id.* ¶ 15. Because of this, the defendant's "act of falling on [his wife] and breaking her arm was an involuntary act for which he cannot be held accountable." *Id.* Therefore, this court found insufficient evidence to prove the defendant guilty of aggravated domestic battery. *Id.*

¶ 22    In this case, unlike in *Martino*, defendant was fully capable of controlling his actions and movements when making physical contact with Bourgouis. *Martino* is therefore inapposite. Because defendant knowingly made physical contact of an insulting or provoking nature with Bourgouis when he struck her head against a wall while on public property, the State presented sufficient evidence to prove that he committed aggravated battery.

¶ 23                    B. Count 8 – Aggravated Battery

¶ 24    For Count 8, where the jury found that defendant committed aggravated battery by dragging Bourgouis with his arm across her neck and chest while on a public way or property, the State had to prove that defendant committed a battery and that he was on a public way or public property. 720 ILCS 5/12-3.05(c) (West 2018). As with Count 2, defendant correctly does not contest that the police station constitutes public property (see *Castillo*, 2022 IL 127894, ¶ 28), or that West 145th Street, where the evidence showed defendant dragging Bourgouis, was a public way. See *People v. Aguilar*, 286 Ill. App. 3d 493, 498 (1997). In turn, his guilt for Count 8 turns on whether he committed a battery. As noted, "[a] person commits battery if he *** knowingly without legal justification by any means *** makes physical contact of an insulting or provoking nature with an individual." 720 ILCS 5/12-3(a)(2) (West 2018). And here, defendant argues that the State failed to disprove beyond a reasonable doubt that he acted in self-defense. He posits that

he had legal justification to make physical contact with Bourgouis in the manner he did where he was effectuating an arrest, which allowed him to use any force reasonably necessary, and the situation was fluid and chaotic with Bourgouis battering him along with her family threatening him, including them appearing to flag down an SUV.

¶ 25    "A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force." 720 ILCS 5/7-1(a) (West 2018). The elements of self-defense are: "(1) unlawful force threatened against a person, (2) the person threatened was not the aggressor, (3) the danger of harm was imminent, (4) the use of force was necessary, (5) the person threatened actually and subjectively believed a danger existed that required the use of the force applied, and (6) the beliefs of the person threatened were objectively reasonable." *People v. Gray*, 2017 IL 120958, ¶ 50. Self-defense is an affirmative defense, and when the defendant raises it, the State bears the burden of disproving one of the elements of self-defense beyond a reasonable doubt along with proving the other elements of the charged offense beyond a reasonable doubt. *Id.* Whether the defendant was justified in using self-defense is a question of fact for the jury to resolve. *People v. Felella*, 131 Ill. 2d 525, 533 (1989).

¶ 26    Therein lies a potential problem with defendant's self-defense argument on appeal, as he did not pursue a pure self-defense affirmative defense at trial. It is true that, in defendant's various pretrial answers to discovery, he stated that he would assert self-defense at trial. But, during the jury instructions conference, the trial court asked defense counsel if he was requesting a self-defense instruction and counsel responded that he was not. Instead, defense counsel requested, and the court allowed, Illinois Pattern Jury Instructions, Criminal, No. 24-25.12, which provides that a peace officer need not retreat or desist in making a lawful arrest and that he can use reasonable

force to effectuate an arrest. That instruction is modeled after section 7-5(a) of the Criminal Code of 2012 (Code) (720 ILCS 5/7-5(a) (West 2018)). See Illinois Pattern Jury Instructions, Criminal, No. 24-25.12, Committee Note. Meanwhile, Illinois Pattern Jury Instructions, Criminal, No. 24-25.06, which details the defense of self-defense, is modeled after section 7-1 of the Code (720 ILCS 5/7-1 (West 2018)). See Illinois Pattern Jury Instructions, Criminal, No. 24-25.06, Committee Note. Section 7-1 of the Code provides a distinct affirmative defense from section 7-5(a) of the Code. See 720 ILCS 5/7-1; 7-5(a) (West 2018).

¶ 27    In a sufficiency of the evidence argument, "[a] defendant forfeits an affirmative defense by failing to make it in the trial court." *People v. Shepherd*, 2020 IL App (1st) 172706, ¶¶ 16-17; see also *People v. Bardsley*, 2017 IL App (2d) 150209, ¶¶ 16-17 (same); but see *People v. Tarasiuk*, 2023 IL App (1st) 211453-U, ¶ 29 (not finding forfeiture in a sufficiency of the evidence contention); *People v. Wiggen*, 2021 IL App (3d) 180486, ¶¶ 16-18 (same). Defendant did not request a self-defense instruction and, in fact, his defense counsel affirmatively denied wanting one. As such, it is arguable that defendant forfeited his self-defense contention on appeal. See *Shepherd*, 2020 IL App (1st) 172706, ¶¶ 16-17; *Bardsley*, 2017 IL App (2d) 150209, ¶¶ 16-17.

¶ 28    Additionally, "[b]ecause self-defense presupposes the intentional use of force in defense of one's person, no instruction of self-defense is applicable to an act that a defendant denies committing." *People v. Cacini*, 2015 IL App (1st) 130135, ¶ 44; see also *People v. Johnson*, 2023 IL App (4th) 210662, ¶ 87 (observing that the "[d]efendant's argument on appeal that he was entitled to a self-defense instruction after denying the charged conduct is in direct contradiction to an entire body of appellate caselaw"). In Count 8, the charged conduct alleged that defendant dragged Bourgouis with his arm across her neck and chest with her feet at times dangling off the ground. But, at trial, defendant denied that he dragged Bourgouis by her neck or chest, but rather

asserted he had restrained her by the shoulder. Furthermore, he explained how Bourgouis' feet lifted off the ground by asserting she did it herself trying to throw him off balance.

¶ 29    These issues aside and assuming *arguendo* that this contention is properly before us, the State sufficiently disproved that defendant acted in self-defense. First, as discussed, Bourgouis was significantly smaller than defendant, and there was no video evidence supporting his claims that she threatened him or physically assaulted him before his aggressive conduct toward her began. See *Gray*, 2017 IL 120958, ¶ 52 (size disparity between the victim and the defendant relevant in an alleged self-defense case). Moreover, Bourgouis herself denied threatening or physically assaulting defendant. Second, although defendant claimed that Mia and the three children made the scene chaotic by threatening him, the video evidence does not conclusively support his claim. Furthermore, three of the four people outside were children, and defendant was not alone outside, as Sergeant Villegas and Officer Thomas were there by the time defendant started dragging Bourgouis toward the police station. In fact, when defendant dragged Bourgouis to the backdoor of the police station, none of Bourgouis' family members were near them, as they remained in the parking lot with Sergeant Villegas who had support from Officer Thomas. Additionally, according to Bourgouis, none of her family members were armed.

¶ 30    Lastly, although defendant makes much of the SUV that slowly drove toward him and Bourgouis, there was no evidence that this vehicle was in any way connected to Bourgouis or her family. More likely, the driver of that vehicle drove slowly toward them because they were in the middle of the street with defendant having his arm around Bourgouis' neck with his firearm out. After considering this evidence and the remaining evidence presented by the State in the light most favorable to it, a rational trier of fact could have found beyond a reasonable doubt that defendant's belief in the need to defend himself was not objectively reasonable. Because the State presented

sufficient evidence to disprove one of the elements of self-defense beyond a reasonable doubt and defendant does not contest the sufficiency of the evidence as to the other elements of Count 8, the State presented sufficient evidence to prove that defendant committed aggravated battery by dragging Bourgouis with his arm across her neck and chest with her feet at times dangling off the ground while on a public way or property. See *Gray*, 2017 IL 120958, ¶ 50.

¶ 31                              C. Count 5 – Official Misconduct

¶ 32    Defendant lastly concedes that, if the State sufficiently proved either aggravated battery conviction, there would be sufficient evidence to prove he committed official misconduct. We agree.

¶ 33    To prove Count 5, the State had to show that defendant, as a public employee in his official capacity, "[k]nowingly perform[ed] an act which he knows he is forbidden by law to perform" (720 ILCS 5/33-3(a)(2) (West 2018)), *i.e.*, a battery in this case. There is no question that defendant was a public employee in his official capacity when the incident happened. See 720 ILCS 5/2-17 (West 2018); *People v. Williams*, 393 Ill. App. 3d 77, 82 (2009), *aff'd*, 239 Ill. 2d 119 (2010). And because the State sufficiently proved that defendant committed two counts of aggravated battery, which necessarily means he committed battery, the State proved beyond a reasonable doubt that he committed official misconduct. See 720 ILCS 5/33-3(a)(2) (West 2018).

¶ 34                              III. CONCLUSION

¶ 35    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 36    Affirmed.