2025 IL App (1st) 232458-U

No. 1-23-2458

Order filed May 12, 2025

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 22 MC1 196566 |
| | ) | |
| GUILLERMO LEDESMA, | ) | The Honorable |
| | ) | Robert Kuzas, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE LAVIN delivered the judgment of the court.
Justice Cobbs concurred in the judgment.
Justice Pucinski specially concurred.

**ORDER**

¶ 1     *Held*:  Defendant's convictions for battery affirmed where his intentional pushing of two individuals was objectively insulting and provoking.

¶ 2     Following a bench trial, defendant Guillermo Ledesma was found guilty of two counts of misdemeanor battery and sentenced to one year of conditional discharge and 40 hours' community service. On appeal, defendant contends the evidence was insufficient to prove that he knowingly

caused bodily harm to the two individuals or made contact of an insulting or provoking nature with them. We affirm.

¶ 3 Defendant was charged by misdemeanor complaints with battery against Marty Flood and James Murphy. The complaints alleged that defendant, without legal justification, knowingly and intentionally caused bodily harm to Flood and Murphy by pushing them. The statutory citations included in the complaints, however, cited to the provision for battery premised on physical contact of an insulting or provoking nature (720 ILCS 5/12-3(a)(2) (West 2022)).

¶ 4 At trial, Murphy testified that he worked for a stadium management company staffing events at Soldier Field. On September 3, 2022, Murphy was working a concert that included a standing room only "pit" near the stage. This section required a special ticket to enter. Murphy stood near the west entrance to the pit, which was crowded. He wore a uniform comprising a shirt and hat with company and Soldier Field logos and an identification lanyard around his neck. A few female ushers from a security company stood in front of Murphy checking tickets and providing wristbands to enter the pit area.

¶ 5 At approximately 9:20 p.m., Murphy observed defendant, whom Murphy identified in court, push the female ushers and proceed to the pit. Defendant "kept going through even though he didn't have the proper credentials or ticket." Murphy told defendant, "That's far enough. You can't go in there." Defendant, who was facing Murphy, pushed Murphy twice and then swung towards his chest. Murphy radioed for back up. Defendant did not speak to anyone during this altercation, was not listening to anyone's instructions or commands, including from police officers when they arrived, and seemed highly intoxicated. Murphy suffered no injuries but "felt threatened" when defendant pushed him.

¶ 6 On cross-examination, Murphy testified that individuals stood near the entrance to the pit informing attendees who could and could not enter the pit. Murphy testified that pits were a separate area and not necessarily "mosh pits." Defendant tried to enter the pit area, "which was an area he was not allowed in because he did not have a ticket." The court asked Murphy whether defendant's contact was insulting and provoking to him, and Murphy answered, "Yes." Murphy also testified that he spoke with Chicago police officers that night and "probably" told them that defendant punched him in addition to pushing him, but he was not certain because he was "right back out in the pit working." When presented with a copy of his complaint, Murphy acknowledged that it only stated that defendant pushed him.

¶ 7 On redirect examination, Murphy testified that he was not "being moshed around in the crowd." Defendant did not accidentally bump into Murphy, but shoved Murphy after shoving the security staff in front of him.

¶ 8 Flood testified that on September 3, 2022, he was working as event staff at Soldier Field and wore his uniform consisting of a hat, shirt, and badge with Soldier Field logos. Around 9 p.m., Flood was standing near the west entrance to the pit when he "got hit" from behind. He was not sure if it was a punch or push. Flood turned and observed a man he identified in court as defendant. Flood also observed defendant push two female ushers and "barge through." Flood held defendant's arms to stop him from being aggressive with people and pushing a young man in front of him. Backup was called, and officers took defendant away. Defendant appeared intoxicated and unresponsive to event staff.

¶ 9 On cross-examination, Flood acknowledged that when he was pushed from behind, he could not see who pushed him, and he "assume[d] it was the person next to [him] pushing through

on everybody else." Flood did not have injuries or visible marks and did not receive medical attention. The pit entrance was 3½ to 4 feet wide. The pit area was crowded with people trying to enter, most of whom promptly presented their tickets to the ushers. Anyone not presenting the proper ticket was turned away. Flood agreed that "a lot of people" were trying to enter the pit, but they were not pushing.

¶ 10    On redirect examination, Flood testified that when he turned after he was pushed, defendant was right behind him.

¶ 11    Defendant testified that on the night of September 3, 2022, he attended a concert at Soldier Field for a "hard core" band for which he had purchased a ticket in the general admission section. At approximately 9:10 p.m., while the band played and his "adrenalin was pumping," he headed to the "mosh pit" entrance. Someone there grabbed his wrists. Defendant "didn't really care," and he continued walking toward the stage. Defendant was pulled back, so he pushed forward. After "they didn't let go," defendant "pushed them off" him. He was then "tackl[ed]," saw 8 to 10 people with red shirts, and heard them "mumbling tickets." No one identified themselves as security, police, guards, or employees of Soldier Field, and no one told him he was under arrest. Defendant did not have anything to drink or consume any drugs that day.

¶ 12    On cross-examination, defendant testified that he had a ticket to enter the pit. No one asked him for a ticket or wristband to enter the pit. Once in the pit, he felt people grabbing both his wrists, but he proceeded forward. He then "felt somebody pull [him] back," so he "poked" and saw a lot of red shirts. The people were pulling him, and he "pushed back." Security was not working near the pit, no one announced themselves as security, and he was not aware of any Soldier Field

personnel working in the pit because there was "no announcement." Only when the people in red shirts tackled him to the ground did he became aware that there was security in the pit area.

¶ 13    On redirect examination, defendant testified that as he was walking toward the pit area, he did not know the people in red shirts were security personnel, and they did not wear anything indicating they were security.

¶ 14    The trial court found defendant guilty of both counts of battery. The court explained that it weighed the evidence and the witnesses' credibility and applied the appropriate statutory law and presumptions. The trial court found *People v. Peck*, 260 Ill. App. 3d 812 (1994), which examined whether conduct was insulting or provoking, to be "precisely on point." The trial court also found defendant's testimony and credibility "unbelievable" and "self-serving."

¶ 15    Defendant filed a motion for a new trial. In denying defendant's motion, the trial court noted the evidence showed that Murphy and Flood were attempting to stop defendant from entering the pit because he did not produce the required ticket.

¶ 16    Following a hearing, the trial court sentenced defendant to one year of conditional discharge and 40 hours' community service. Defendant made an oral motion to reconsider his sentence, which the court denied.

¶ 17    On appeal, defendant challenges the sufficiency of the evidence showing he knowingly caused bodily harm and made contact of an "insulting or provoking nature" to Murphy and Flood.

¶ 18    As an initial matter, the parties disagree on the applicable standard to review the sufficiency of the evidence as to the battery against Flood. Defendant posits that this court should review the guilty finding *de novo*, arguing that he does not challenge the facts or Flood's credibility, but that the undisputed facts were insufficient to prove him guilty beyond a reasonable doubt. On the other

hand, the State contends that the trial court is entitled to deference as the finder of fact because defendant is challenging the inferences the court made as to whether he struck Flood.

¶ 19    We agree with the State. In raising his insufficiency of the evidence claim, defendant challenges the inferences the trial court drew from Flood's testimony, which presents a fact determination not subject to *de novo* review. See *People v. Loggins*, 2019 IL App (1st) 160482, ¶ 32 (stating that *de novo* review is not applicable where "the parties disagree about the inferences that can be drawn from the trial evidence"). We therefore reject defendant's request to review this case *de novo* and instead apply the familiar standard of review for a challenge to the sufficiency of the evidence. See *People v. Lattimore*, 2011 IL App (1st) 093238, ¶ 36 (rejecting the defendant's request to apply a *de novo* standard of review where he contested the inferences drawn from the evidence).

¶ 20    Where a defendant challenges the sufficiency of the evidence to sustain his conviction, the question for the reviewing court is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Cline*, 2022 IL 126383, ¶ 25. This standard applies whether the evidence is direct or circumstantial. *People v. Aljohani*, 2022 IL 127037, ¶ 66. Under this standard, all reasonable inferences from the evidence must be allowed in favor of the State. *People v. Lloyd*, 2013 IL 113510, ¶ 42.

¶ 21    The credibility of the witnesses, the weight to be given to their testimony, the resolution of any conflicts in the evidence, and the reasonable inferences to be drawn from the evidence are within the province of the trier of fact, and we will not substitute our judgment for that of the trier of fact on these matters. *People v. Gray*, 2017 IL 120958, ¶ 35. In weighing the evidence, the fact

finder is not required to disregard the inferences that naturally flow from that evidence, nor must it search for any possible explanation consistent with innocence and raise it to the level of reasonable doubt. *Cline*, 2022 IL 126383, ¶ 41. Testimony will only be found insufficient where the record "compels the conclusion that no reasonable person could accept it beyond a reasonable doubt." *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004). A defendant's conviction will be reversed only if the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt. *Cline*, 2022 IL 126383, ¶ 25.

¶ 22 A person commits battery when he knowingly without legal justification by any means (1) causes bodily harm to an individual, or (2) makes physical contact of an insulting or provoking nature with an individual. 720 ILCS 5/12-3(a) (West 2022). A person acts knowingly when he is "consciously aware" that that result of his conduct, described by the statute defining the offense, "is practically certain to be caused by his conduct." 720 ILCS 5/4-5(b) (West 2022). Circumstantial evidence and inferences from a defendant's conduct can prove a knowing mental state. *People v. Phillips*, 392 Ill. App. 3d 243, 259 (2009).

¶ 23 An objective test is applied to determine whether a reasonable person under the circumstances would find the nature of physical contact "insulting or provoking." *People v. Davidson*, 2023 IL 127538, ¶ 16. This objective test does not require the State to prove that a victim of a battery "subjectively felt insulted or provoked by the contact." *Id.* ¶ 25. The context of the defendant's contact, including the relationship between the people involved and the purpose behind that contact, can distinguish between innocuous contact and contact of an "insulting or provoking nature." *Peck*, 260 Ill. App. 3d at 814-15 (defendant spitting at police officer was insulting or provoking); see also *People v. DeRosario*, 397 Ill. App. 3d 332, 334 (2009)

("defendant intentionally sat where he was bound to come in contact with the victim and *** he knew that this conduct would provoke her").

¶ 24    Defendant contends that the trial court did not explicitly reference which prong of the battery statute it applied to find him guilty and, therefore, argues the sufficiency of the evidence as to each prong. The State responds that defendant was found guilty of battery for knowingly making contact of an insulting and provoking nature. We find no ambiguity in the trial court's ruling. In finding defendant guilty, the court referenced *Peck*, a case addressing whether a battery was of an "insulting or provoking nature" under an objective standard. See *Peck*, 260 Ill. App. 3d at 814. The court's remarks demonstrate that it applied the "insulting or provoking nature" prong of the battery statute. Therefore, we need not address defendant's claims of insufficient evidence of bodily harm to sustain a battery conviction.

¶ 25    Turning first to the battery against Murphy, in viewing the evidence in the light most favorable to the State, we conclude that a rational trier of fact could have found that defendant knowingly made contact of an insulting or provoking nature. Entrance to the pit area was restricted. Ushers checked tickets and distributed wristbands to attendees with the proper ticket for entrance to the restricted area. According to Murphy, defendant did not have the required ticket but was nonetheless attempting to enter the pit area. After pushing past the two female ushers, Murphy told defendant to stop. Defendant, who was facing Murphy, then pushed Murphy twice and swung towards his chest. Defendant's contact with Murphy, which occurred after defendant had been stopped from entering the pit area, can reasonably be inferred to have been knowing and intentional and not merely accidental or incidental. Applying an objective standard, we find that a reasonable person who was trying to do his job limiting attendees into a restricted area to those with the

required ticket would find defendant's conduct insulting or provoking. We therefore find that the evidence was sufficient to prove defendant guilty of battery against Murphy beyond a reasonable doubt.

¶ 26    Similarly, viewing the evidence in the light most favorable to the State, a rational trier of fact could have found that defendant knowingly made contact of an insulting or provoking nature with Flood. Flood was hit from behind, turned, and saw defendant right behind him pushing the two female ushers, then continue to "barge through" the area. The trial court, as finder of fact, reasonably inferred that defendant pushed Flood. Moreover, being hit from behind by someone would be insulting or provoking to any reasonable person working as event staff near an area that required a specific ticket for entry. We therefore find that the evidence was sufficient to prove defendant guilty of battery against Flood beyond a reasonable doubt.

¶ 27    Nonetheless, defendant contends that any contact with Murphy and Flood was incidental and not knowing and intentional. Specifically, he contends that any contact occurred near the narrow, loud, and crowded entrance to the mosh pit where defendant claims he did not see any security or staff, no one had asked to see his ticket, and he had a right to be in that area. He further contends that no one saw him make contact with Flood and evidence establishing the manner in which contact was made with Flood was lacking. However, the court heard defendant's version of events and found his testimony "unbelievable" and "self-serving." Defendant is essentially asking

this court to reweigh the evidence, reach different inferences, and make credibility determinations, which we cannot do. *Gray*, 2017 IL 120958, ¶ 35.[1]

¶ 28    In conclusion, the evidence was sufficient to prove defendant guilty beyond a reasonable doubt of battery against Murphy and Flood.

¶ 29    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 30    Affirmed.

¶ 31    JUSTICE PUCINSKI, specially concurring

¶ 32    I agree the State proved defendant guilty of battery where his intentional pushing of two individuals was objectively insulting and provoking.

¶ 33    I write only to point out that the objective standard here for the battery was proved by the State without any help from the judge.

¶ 34    The trial judge improperly inserted himself into the proceedings as part of the prosecution when he asked Murphy whether the defendant's contact was insulting and provoking to him, a subjective reaction. This puts the court into the position of attempting to assist the prosecution's case, which is unacceptable.

¶ 35    However, since the standard of proving that the touch was insulting and provoking is objective, this was unnecessary. It was an error, but harmless.

---

[1] In arguing the evidence was insufficient to prove his guilt beyond a reasonable doubt, defendant also posits that the trial court engaged in "speculation, burden shifting, eliciting evidence to strengthen the State's case, and refusing to admit relevant evidence of surrounding context." To the extent defendant purports to challenge the court's evidentiary rulings, these arguments are largely conclusory and unsupported with a developed legal analysis. See *Benton v. Little League Baseball, Inc.*, 2020 IL App (1st) 190549, ¶ 47 (this court "is not merely a repository into which parties may dump the burden of argument and research, nor is it the obligation of this court to act as an advocate").