2026 IL App (2d) 250239-U
No. 2-25-0239
Order filed February 26, 2026

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,

v.

LAYTH BLOCK, Defendant-Appellant.

Appeal from the Circuit Court of Kendall County.
Honorable Lisa F. Accardi, Judge, Presiding.
No. 23-DV-172

JUSTICE HUTCHINSON delivered the judgment of the court.
Presiding Justice Kennedy and Justice Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The evidence was sufficient to sustain defendant's conviction for domestic battery by insulting or provoking contact; affirmed.

¶ 2    After a bench trial, defendant Layth Block was found guilty of misdemeanor domestic battery (720 ILCS 5/12-3.2(a)(2) (West 2022) (insulting or provoking contact)) and was sentenced to 12 months' court supervision. He appeals and contends that the State's evidence did not disprove that he acted in self-defense and was insufficient because the complaining victim "was not a reliable witness." We affirm.

¶ 3    At trial, Brian Kapp testified that he rented a room to defendant inside a single-family home in Joliet. Kapp also lived in the house. At some time in the late evening on December 13, 2025, Kapp heard a commotion in the garage and went to investigate. Kapp saw defendant by the garage door. Earlier, Kapp had moved defendant's belongings outside in front of the garage. Defendant confronted Kapp in the living room about "messing with [his] stuff ***." Kapp responded that it was because defendant wasn't paying his rent and was causing "too many issues" with the other tenants. Defendant put his hand on Kapp's throat and forced Kapp to the ground while choking him. Defendant made statements about people messing with his things, and repeatedly asked Kapp if he wanted defendant "to spare [his] life." While Kapp was on the ground, defendant briefly took his grip off of Kapp's throat. Kapp yelled out for help and defendant said, "oh, no, you don't want to do that," and pulled out a knife and pointed it at Kapp's face. One of the tenants, Regina, turned on a light in the kitchen, and defendant got off of Kapp and left. Kapp was scared for his life, and his neck was red where defendant's fingers had been.

¶ 4    Defendant testified that he came home from work late at night, saw his stuff in front of the garage, and entered the home through the "doggie door." Inside the house, defendant recognized Kapp in the darkness by his stature. Per defendant, Kapp was holding something in his left hand; "it ended up being a phone" but "[a]t the time [defendant] didn't know if it was a taser, if it was a gun, [or] if it was a knife." Defendant was scared and stated that Kapp moved towards defendant in an aggressive manner without saying anything. Defendant then "brought [Kapp] down to the ground" in a "[j]ujitsu style *** controlled manner." More specifically, defendant "wrapped [his] leg around, like taking control of [Kapp's] arms" and defendant also "wrapped [his] leg around [Kapp's] back leg, tripping him down to the ground and controlling him so nobody was hurt." This is called a "leg trap or something like that" and defendant was particularly careful so that Kapp

did not hit his head on the ground. Defendant told Kapp to "relax" while defendant attempted to determine if Kapp "had a gun or if he had a knife or a taser." Defendant conceded that he was carrying a knife in his coat, but claimed he never brandished it. Defendant admitted that he might have touched Kapp's throat when he was "bringing [Kapp] down to the ground" but denied choking him. Defendant also admitted that he had "pinn[ed]" Kapp and may have been kneeling on him, but defendant denied using his body weight to secure Kapp. When asked why he took Kapp down to the floor, defendant stated his rationale: "Because I was in immediate danger at least is what I assumed." According to defendant, when Regina turned on the kitchen light, the police also "happened to be there" and defendant was arrested. Defendant estimated that he held Kapp on the ground for between five and 30 seconds.

¶ 5 On cross-examination, defendant stated that he could not see Kapp because it was dark, but paradoxically defendant could tell that Kapp's "demeanor" was aggressive like "a UFC fight[er]" after the bell rings to start the round. After he pinned Kapp to the ground, defendant attempted to "mitigate the weapon" in Kapp's possession. Instead, defendant determined the object in Kapp's hand was a cell phone. Then, defendant said, "[b]efore I knew it, I was in handcuffs and on my way to the police station." The trial court found that Kapp was credible and a household member, and that defendant was not credible; the court entered a judgment of conviction accordingly.

¶ 6 On appeal, defendant contends the evidence was insufficient. He claims that he "subdue[d]" Kapp "without injury," that he "reasonably perceived an armed threat in the darkness," and that Kapp's "more damning account was unreliable and uncorroborated." These arguments are unpersuasive.

¶ 7    We confess that we are not certain what defendant means when he says Kapp's retelling was "more damning," but we understand defendant's general point: he disputes Kapp's version of events and believes that "rejecting [defendant's] testimony as incredible was an error." Defendant's arguments all orbit the same premise, urging that we should disbelieve Kapp, and in so doing, defendant reveals his arguments to be misguided. As is often said, we are a court of review, not first view, and we are not free to reweigh the evidence at defendant's invitation. That is:

> "When considering a challenge to the sufficiency of the evidence, it is not the function of a reviewing court to retry the defendant. Rather, in a bench trial, it is for the trial judge, sitting as the trier of fact, to determine the credibility of witnesses, to weigh evidence and draw reasonable inferences therefrom, and to resolve any conflicts in the evidence. A reviewing court will not reverse a conviction simply because the evidence is contradictory or because the defendant claims that a witness was not credible." (Citations omitted.) *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009).

Likewise, "[i]t remains the firm holding of [our supreme] court that the testimony of a single witness, if positive and credible, is sufficient to convict, even though it is contradicted by the defendant." *Id.*

¶ 8    Unlike defendant, we find nothing inherently improbable in our reading of the transcript of Kapp's testimony, and therefore we can *only* defer to the trial court's credibility findings, as it, unlike us, saw and heard the victim's testimony alongside defendant's. To the extent defendant claims that the trial court failed to fully consider his self-defense claim, the trial court is presumed to know the law and to have applied it properly and we find nothing unreasonable in its analysis. See generally *People v. Howery*, 178 Ill. 2d 1, 32 (1997). The trial court's explanation indicates that it found defendant was the initial aggressor, not Kapp, and that defendant's use of force—by

his own admission, restraining Kapp by the neck—was objectively unreasonable. There was also no evidence that Kapp was a dangerous character who quickly resorted to violence or was known to carry deadly weapons such as a gun, or a knife, or a taser. *Cf. People v. Heintz*, 2026 IL 131340, ¶ 53. Regardless, *none* of defendant's analysis disputes either of the essential elements of this offense, namely (1) that Kapp was a household member, and (2) that the conduct Kapp described was clearly contact of an insulting and provoking nature. 720 ILCS 5/12-3.2(a)(2). Defendant's notation that Kapp did not suffer any serious injury is beside the point. See, *e.g.*, *People v. Green*, 2011 IL App (2d) 091123, ¶ 23 ("[t]he domestic battery statute's plain language defines the offense in terms of contact that insults or provoked the victim, and the contact does not need to cause physical injury"). The reason the law punishes even minimal conduct of this type is because of its potential to escalate into much more serious and violent offenses, especially between family and household members.

¶ 9    Defendant points out that there were no other witnesses who testified, but he also notes, citing *People v. Smith*, 185 Ill. 2d 532, 541 (1999), that one witness's testimony is adequate to sustain a criminal conviction. Kapp's testimony was positive and clear, and the trial court found him credible. After carefully reviewing the record, we determine that a reasonable trier of fact could find the act of choking and restraining the victim (and, further, brandishing a knife and asking the victim if he wished his life to be "spare[d]") was contact of an insulting and provoking nature to a household member. See *People v. Davidson*, 2023 IL 127538, ¶ 16. In sum, we affirm the judgment of the circuit court of Kendall County.

¶ 10    Affirmed.