2024 IL App (2d) 190243-U
No. 2-19-0243
Order filed June 12, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 18-CM-1380 |
| JEFFREY N. WARD, | ) ) ) | Honorable Clayton C. Lindsey, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE BIRKETT delivered the judgment of the court.
Presiding Justice McLaren concurred in the judgment.
Justice Hutchinson specially concurred.

**ORDER**

¶ 1   *Held*: The assignment of a judge outside of the 16th Judicial Circuit did not deny defendant a fair trial. The trial court did not err in denying defendant's motion for a directed verdict. The trial court did not err in denying the defendant's non-IPI jury instructions. The evidence was sufficient to prove defendant guilty of domestic battery. Defendant's conviction is affirmed.

¶ 2   Defendant, Jeffrey N. Ward, was convicted by a jury of the offense of domestic battery (720 ILCS 5/12-3.2(a)(2) (West 2018)) and sentenced to one-year conditional discharge. In *People v. Ward*, 2021 IL App (2d) 190243 (*Ward I*), we reversed defendant's conviction, holding that the trial court erred in denying defendant's motion for directed verdict where the evidence was

insufficient to prove that the victim, defendant's wife, Leslie Ward, was "insulted or provoked" when defendant pushed her. *Id.* ¶ 82. Justice Zenoff concurred in part and dissented in part with opinion. *Id.* ¶¶ 81-114. We denied the State's Petition for Rehearing. Our supreme court denied the State's Petition for Leave to Appeal but directed us to vacate our judgment and consider it's "opinion in *People v. Davidson*, 2023 IL 127538, on the issue of whether the trial court erred in denying defendant's motion for a directed verdict, and determine if a different result is warranted."

¶ 3    The parties have submitted supplemental briefs on the effect of *Davidson* on the issue of whether the trial court erred in denying defendant's motion for a directed verdict. We now vacate our judgment in *Ward I* and, for the following reasons, affirm defendant's conviction.

¶ 4                                    I. BACKGROUND

¶ 5    On June 1, 2018, defendant was involved in a verbal altercation with police officers at the scene of an accident involving his 18-year-old son. When defendant's wife, Leslie Ward, stepped between defendant and one of the officers, defendant pushed her to the side. According to the officers, defendant also yelled or screamed "shut up" as he pushed Leslie. Defendant was arrested and charged by complaint with two counts of domestic battery. Count I alleged that defendant knowingly caused bodily harm to Leslie. 720 ILCS 5/12-3/2(a)(1) (West 2018). Count II alleged that defendant made contact of an insulting nature with Leslie by pushing her "with both hands in her shoulder and neck area, causing her to lose her balance and take a few steps back." 720 ILCS 5/12-3.2(a)(2) (West 2018). Leslie Ward refused to cooperate and insisted that her husband had done nothing wrong.

¶ 6                A. Assignment to a Judge from the Fifteenth Judicial Circuit

¶ 7    The Chief Judge of the Sixteenth Judicial Circuit requested that a judge from another judicial circuit be assigned to hear defendant's case. On June 4, 2018, our supreme court ordered

the Chief Judge of the Fifteenth Judicial Circuit to assign a judge from that circuit to preside over defendant's case. Judge Redington was assigned to hear the case. Defendant moved for substitution of judge. 725 ILCS 5/114-5(a) (West 2018). Judge Clayton Lindsey from the Fifteenth Judicial Circuit was assigned to preside over the proceedings, all of which took place in Kane County.

¶ 8                                    B. Motion to Dismiss

¶ 9      Prior to trial, defendant filed a motion to dismiss, arguing that Leslie Ward told the arresting officer, Sergeant. Carbray, that the "push" did not constitute domestic battery and that "[defendant's] arrest was just another act of harassment against her family from the Geneva Police Department." A copy of Leslie Ward's written statement from June 1, 2018, was attached as an exhibit. The State's response argued that the victim's desire to drop charges is not grounds for dismissal. The trial court denied defendant's motion.

¶ 10                                   C. State's Motion *in Limine*

¶ 11     Prior to trial, the State filed a motion *in limine* to bar Leslie Ward from testifying that she "consented to the physical contact." The State argued that Leslie Ward's "consent" has no bearing on whether the defendant committed a domestic battery on June 1, 2018, because according to *People v. Ford*, 2015 IL App (3d) 130810, "consent is neither a statutory nor a common law defense to domestic battery." Throughout the prosecution of the case, the State posited that the fact that Leslie Ward did not feel insulted or provoked was irrelevant. The State argued that allowing Leslie Ward to testify that she consented would be "misleading to the jury as it would be misstating the law." The trial court barred defendant from arguing that "the alleged victim consented directly or indirectly to the touching that is alleged to have occurred in this matter." The trial court ruled that the victim or other witnesses could testify as to "what [they] observed or experienced related to the incident in question." The trial court noted that *Ford* does state that

- 3 -

"consent is a defense to what would otherwise be a minor sort of offensive touching; medical procedures and batteries that are incidents to participating in certain sporting events," but stated that "by definition, a domestic battery is not a minor sort of offensive touching."

¶ 12                                    D. Trial Testimony

¶ 13    Prior to trial, the State *nolle prossed* count I, domestic battery alleging bodily harm. Barbara Stilling testified that, on June 1, 2018, she was involved in a minor traffic accident in Geneva. Defendant's 18-year-old son, Matthew, rear ended Stilling's vehicle. Officer Matthew Hann responded to the scene and had the involved vehicles moved to a nearby parking lot. Defendant, followed by his wife Leslie, arrived on the scene and spoke to their son. Stilling heard defendant say to Officer Hann "something to the effect like 'I see a f*** a*** here and it's you.' " A short time later, Sgt. Carbray arrived and began speaking to defendant. Defendant leaned forward and was "getting in [Carbray's] face." Stilling saw Leslie Ward come between defendant and Carbray "to try to diffuse the situation." Leslie said something but Stilling did not hear what she said. Stilling saw defendant use his right hand to push Leslie off to the right, either on the "neck or upper shoulder." Leslie "stumbled a little bit but did not fall." Stilling did not hear defendant say anything. The prosecutor asked Stilling how seeing defendant "shove" Leslie "made her feel." Stilling said she was "surprised, startled that it actually happened." On cross-examination, Stilling added that she was "a little shocked" when she saw defendant move his wife out of the way. Stilling acknowledged that, when she was interviewed by Sgt. Carbray, she did not tell him she was "startled" or "shocked," but she may have said she was "surprised." Leslie was facing defendant with her back to Sgt. Carbray when defendant pushed Leslie.

¶ 14    Leslie Ward testified that she and defendant had been married for 27 years. Leslie is a middle school teacher and has a master's degree. She and defendant have three sons. On June 1,

2018, Leslie and defendant received a text and a phone call from their youngest son, Matthew, telling them that he was involved in a car accident. Leslie and defendant drove separately to the scene. When Leslie arrived, defendant was speaking to a police officer. Leslie testified that defendant was not happy. The Geneva Police Department had "not treated him particularly well" in the past. Leslie stepped between defendant and the officer. She did not recall if she said anything, but she might have placed her hand on his chest. Leslie testified that defendant never told her to "shut up." Leslie testified that defendant did not shove her out of the way. She said that the contact was similar to passing someone in a hallway and "you go, okay, you need to move." Leslie stated that defendant's attention was on the police officer and he "just moved [her] out of the way." Defendant held on to her so she would not fall. Leslie testified that she did not want to testify. She added, "I think this is a complete farce because there is nothing, nothing, that [defendant] has ever done to me to hurt me. Ever. He has not insulted me. He has never hurt me. He has done an incredible job helping me do what I do now." Leslie testified that, when defendant was arrested, she expressed her "displeasure to the police officers" and provided a written statement. She said she stepped between defendant and the officer because the Geneva police had tended to treat defendant "very poorly and unfairly."

¶ 15    On cross-examination, Leslie testified that she was not insulted, shocked, or provoked when defendant moved her out of the way. After defendant pushed her, the officer said, "That was domestic abuse," and informed defendant that he was "a mandated reporter." Leslie told the officer that she, as a teacher, was a mandated reporter and what defendant did should not be reported. Leslie stated that she made it clear to the police that she was unhappy with the whole ordeal. The trial court sustained the State's objection to defense counsel's attempt to introduce Leslie's written statement on the grounds that it was a prior consistent statement.

¶ 16    Officer Matthew Hann testified that defendant was "highly agitated" and spoke in an "angry," "elevated" tone. Defendant called him a "f*** a***." After Sgt. Carbray arrived, Hann continued his traffic crash investigation. Hann heard Sgt. Carbray ask Leslie how old her son was, and Leslie said he was 18. At that point, Hann "observed [defendant] scream [for her to] shut up and [shove Leslie] with both of his hands." Leslie lost her balance and took a few steps to stay on her feet. Hann heard Sgt. Carbray tell defendant that "he just committed a domestic battery[,] and he was placed under arrest at that time." Hann testified that Leslie was not cooperative, and, pursuant to the Geneva Police Department protocol, an officer signed the complaint. Over defense counsel's objection, Hann testified that "[t]here's a hesitancy for the victim to sign complaints against the offender" and "that's what happened in this case."

¶ 17    On cross-examination, Hann acknowledged that he knew defendant was a vocal critic of the Geneva Police Department. Hann did not document in his report that defendant was "aggressive, upset, or angry," but did use the word "agitated" to describe defendant's demeanor.

¶ 18    Sergeant George Carbray testified on direct examination that he was called to the accident scene because defendant showed up and was "agitated." Carbray had handled calls with defendant on "countless occasions," totaling at least a "dozen incidents." Carbray did not like defendant and believed he was "a bully who creates a lot of issues and tries to manipulate people." Carbray described defendant's demeanor at the accident scene as "unhinged" to the point of "physically shaking." Carbray acknowledged that he raised his voice while telling defendant to calm down. He told defendant that he was "interfering in the investigation," and that his son is "18 who is an adult." When Leslie responded to Carbray's question concerning her son's age, defendant "took both hands, physically pushed her on the shoulder and neck area, and then she went a couple of steps to the side and regained her balance." Carbray told defendant he committed a domestic

battery. He did not immediately arrest defendant as the "back and forth" between them continued. Defendant did not calm down, so Carbray placed defendant under arrest. Carbray said that both state law and Geneva Police Department policy required that, when a police officer "firsthand observes a domestic violence act occur, we are immediately to protect the victim by making an arrest." Carbray said that, while Leslie Did not want defendant to be arrested, that had "no bearing" on whether he was obligated to make an arrest. Over defense counsel's objection, Carbray testified that police officers sign complaints in domestic violence cases "[b]ecause the spouse requires something from the other spouse, be it housing, money, they want to rectify, they don't want to ruin whatever is going on inside the family for the kids. So often that can be the case." Sgt. Carbray denied having a vendetta against defendant and believed he had treated defendant fairly. He and defendant had a lengthy discussion at the police station about "what constituted domestic battery" and that pushing his wife with both hands is domestic violence. Defendant acknowledged that he did push Leslie.

¶ 19    On cross-examination, Carbray testified that he had been to the Ward home on numerous occasions. He knew defendant was a journalist who writes about the Geneva Police Department's incompetency. He acknowledged that, in his report, he did not use the words "unhinged" or "physically shaking" to describe defendant. Carbray responded to the Ward home when the house and truck were firebombed; when people were throwing garbage at the Ward house and trying to break in; and when defendant complained about a loud helicopter coming from nearby Delnor Hospital. Sometimes defendant was pleased with the police and sometimes he was upset with them. Before testifying, Carbray looked over "policy" and "the law." Carbray said that when defendant pushed Leslie, Leslie was not standing between him and defendant, she was side by side with defendant. Carbray acknowledged his dislike for defendant is a bias. He also acknowledged

that Leslie told him that arresting defendant was "just another form of harassment against the Ward family."

¶ 20    On re-direct examination, the State asked Carbray, "On each and every occasion that you responded to the defendant in the past, as asked on cross-examination, was he arrested every single time?" Carbray responded, "No, he was not." The State then rested. Defendant elected not to testify and the defense rested.

¶ 21                                E. Motion for a Directed Verdict

¶ 22    At the close of the State's evidence, defendant made a motion for a directed finding.[1] Defense counsel argued that no witness testified "to having been insulted." Counsel pointed out that Leslie Ward "expressly said that she was not insulted." Counsel argued that the only issue is whether the contact between defendant and Leslie was insulting, not defendant's "demeanor towards any other individual." Counsel noted that there were four different versions of events before stating, "Mrs. Ward was, by varying accounts, moved one step or two steps or three steps. Mrs. Ward herself said that Mr. Ward held on to her." Counsel stressed that this was a "minor contact" that "should not be a question that goes to the jury."

¶ 23    The prosecutor noted that in ruling on a motion for a directed verdict, "the [c]ourt views all of the evidence and testimony that has been presented in the light most favorable to the State." The State noted that there was evidence that defendant yelled at Leslie to "shut up" and "then pushed [Leslie] out of the way." The prosecutor argued that defendant "shoved her out of the way because he did not like what she was saying," and that defendant "was enraged with the Geneva

---

[1] "Directed finding" is the phrase usually applied in bench trials. The appropriate phrase is "directed verdict" in a jury trial. *People v. Connolly*, 322 Ill. App. 3d 905 (2001).

Police Department." The prosecutor said this was not a minor contact and it was a fact question "up to the jury." The prosecutor then made the following argument:

> "What I would also like the court to consider is the fact in the simple reading of the statute, the simple reading of the statute reads, that the defendant made physical contact of an insulting and provoking nature with Leslie Ward. It does not state anywhere in the charging documents or the simple reading of the statute that she herself has to be insulted or provoked. It is the nature of the act that is insulting and provoking."

The prosecutor then argued the fact that Barbara Stilling was "shocked" was not impeached and that Stilling "was shocked and insulted and provoked by this." The prosecutor argued that Sgt. Carbray's immediate statement to defendant, that "[he] just committed domestic battery in front of [him]," was evidence that the contact was "insulting and provoking."

¶ 24    The defense responded by arguing that there was "no evidence that this was insulting." Counsel acknowledged that defendant's conduct, as described, would irritate him if he were a police officer and that maybe they should have charged defendant with "obstruction or something else," but not with domestic battery.

¶ 25    The trial court pointed out that while the State needed to show that defendant "[made] physical contact of an insulting or provoking nature with a family member," witnesses are not required to use the words "insulting or provoking." The court then stated as follows:

> "The [c]ourt is going to deny the motion for directed verdict. It's a factual question that the jury is going to decide. Certainly the terms [']insulting['] or [']provoking['] are common enough for a jury to determine *whether or not the testimony as presented is sufficient.* That will be what the question ends up being for the jury to determine." (Emphasis added.)

¶ 26   Defendant elected not to testify and rested without presenting any evidence. Defense counsel, citing *People v. Connolly*, 322 Ill. App. 3d 905 (2001), again asked that the trial court enter a directed verdict. Counsel cited the discrepancies in the "four different stories" and the lack of any evidence that anyone was "insulted." Counsel noted that "Mrs. Ward said I'm not—he moved me to the side. I'm not upset with it." The trial court acknowledged "the differences in the four witnesses" and said the defense had "done a good job," but that "it's a factual determination as to whether a reasonable person would find [the contact] to be insulting." The court said the question of whether defendant "was agitated at the police or whether he was agitated at the alleged victim in this case was 'something for the jury to determine and I'm not determining that at this time.' "

¶ 27   Defense counsel then made a motion for a mistrial based on the State's failure to "perfect impeachment" of Leslie Ward when she denied speaking to defendant while he was at the police department. Leslie denied that defendant told her "what to say at bond call." The trial court denied the motion.

¶ 28   During closing argument, the State argued that defendant took out his frustration with his son and the police "on his wife when he committed a domestic battery on her."

¶ 29   The defense argued that the evidence showed only that defendant moved Leslie Ward over and that there was no evidence that she was insulted. Counsel argued that Mrs. Ward told Carbray at the time that she was not "offended or hurt" and that the police were "harassing [her] family." During rebuttal argument, the State acknowledged that Leslie Ward did not want charges pressed against defendant. The prosecutor argued that if it were up to Leslie Ward, the domestic battery "would have never been charged." The prosecutor argued that "[t]he People are complaining that this defendant committed a domestic battery and he needs to be held accountable." Next, the

prosecutor noted that Leslie Ward's dislike for her "was palpable," that Leslie believed the "whole thing was a farce," and that Leslie "doesn't believe that this is a crime. It's unfair to her." The prosecutor argued "that is not the law" and that "[i]t doesn't matter that Mrs. Ward doesn't think what happened to her is a crime because it is. She was a victim of domestic battery and that's why you should care." This theme continued as the prosecutor argued, "If a victim of domestic battery cannot get on the stand and say she cares about what happened to her, the People of the State of Illinois will tell you that what happened to her is not okay." The prosecutor argued that defendant was putting Leslie "in her place" and yelled at her to " 'shut up.' How humiliating."

¶ 30    The prosecutor acknowledged that "Mrs. Ward might not want the charges pressed against this defendant" and that "[t]here's a ton of reasons why." The prosecutor then argued that the "kind of conduct exhibited by the defendant in the open, in front of everybody, putting his wife in her place, literally moving her out of the way, that is domestic battery." The prosecutor argued that there was no evidence to suggest bias on the part of the Geneva Police Department because defendant's son was only given a warning ticket for failure to reduce speed. The jury found defendant guilty.

¶ 31                              F. Post-Trial Proceedings

¶ 32    Defendant filed a lengthy post-trial motion, requesting that the trial court vacate the jury verdict and enter a finding of not guilty, or in the alternative, grant defendant a new trial. The motion challenged the assignment of a judge from another circuit; the refusal of defendant's request to present consent as a defense; and the trial court's denial of defendant's motion for a directed verdict based on the insufficiency of the evidence. The motion raised additional claims that are not relevant to this appeal.

¶ 33    In its response to defendant's post-trial motion, the State argued that the "victim in a domestic battery case does not dictate whether charges are filed against the defendant." The State also argued that when an officer "observes an act of domestic battery," the officer "does not have the independent discretion to not make an arrest." The State argued that it did prove "defendant's actions were insulting to Leslie Ward because the jury returned a verdict of guilty." The State argued that Barbara Stilling's testimony that she was "shocked" by defendant's action was "evidence of insulting conduct."

¶ 34    During argument on defendant's post-trial motion, defense counsel argued that the police did have discretion to not make an arrest, and that the Geneva Police Department "[did] not like [his] client." Counsel argued that defendant is an outspoken critic of the system and has "been a very outspoken critic of judges" and "of the Geneva Police Department." Counsel argued that Leslie Ward should have been allowed to testify that she consented. Counsel argued that it was error to instruct the jury on "insulting or provoking" when the charge was "insulting." Defense counsel argued that the assignment of an out of county judge was a "mystery" to him and that no explanation was given as to why that occurred.

¶ 35    The prosecutor argued that defendant cited no case authority for the proposition that it was error to have an out of county judge assigned. The prosecutor also noted that defendant filed a motion for substitution of judge within the statutory time frame, so "he was made aware of it." The prosecutor argued that "[p]ursuant to 750 ILCS 60/304(a)(1) (West 2018), it actually cites to how when a police officer observes an act of domestic violence he is required to make an arrest." The prosecutor again cited the testimony of Barbara Stilling as evidence that the contact was "insulting or provoking." The prosecutor contended that "it comes down to the nature of the act."

¶ 36    The defense responded that the State had not met its burden where there was no evidence that Leslie Ward was insulted or provoked. Counsel agreed that in order to prove insulting or provoking contact, the victim "does not have to testify that he or she was provoked." However, counsel argued that, "in this case, the victim didn't react at all. In fact, she reacted the other way.\*\*\* She said, 'I don't want him arrested. I am not insulted in anyway.' "

¶ 37    The trial court ruled that the assignment of an out of county judge was not an appropriate basis for a post-trial motion. The trial court stated that it was "interesting" that the victim did say "she was not insulted" and "not provoked." The trial court commented:

"She even used the words that she didn't find the touching to be offensive. Her opinion of that is also not controlling. It is the jury that determines what—although—although what the victim says is certainly evidence and certainly can be used. If that is all we had to do, there would be—every time a wife took the stand and said, 'I don't want this charge [anymore]' or 'I want to go back to him,' we would never have a domestic battery conviction. And so I find that argument completely missing the point of what the jury did here.

And I stand by my reading of the *Ford* case. It is, again, descriptive. And this—and I don't believe that a victim can consent to a domestic battery that is defined as a physical contact of an insulting or provoking nature. That[,] in and of itself[,] takes it out of the non-offensive touching."

The trial court stated that the argument regarding incomplete impeachment of Leslie Ward was not well founded. Next, the trial court said that the "defense chose to put all of their eggs in the basket that the Geneva Police Department was biased against Mr. Ward." The court noted that defendant "is certainly entitled to have whatever opinion he wants to have. He didn't take the

stand." The trial court said that through the cross-examination by the defense, "you could tell" that "[defendant] didn't like the Geneva Police Department." The trial court said that defendant counted on convincing the jury that the only reason he was prosecuted was the bias of the Geneva Police Department and that "he guessed wrong. The jury convicted him." The trial court commented that "it was a credibility issue," and three other witnesses besides Leslie Ward "testified as to the touching, as to the incident." For that reason, the trial court denied the post-trial motion.

¶ 38    Following argument on the post-trial motion, the trial court conducted a brief sentencing hearing. The prosecutor began by stating that "defendant does not have any criminal history to report to the court." The State requested a sentence of probation or conditional discharge with a number of conditions, including domestic violence counseling and a mental health evaluation. Defense counsel argued that "there is no history of domestic violence" and what occurred was "a domestic touching, not of violence." Leslie Ward then addressed the trial court. She said, "[W]hat we are doing here is taking away my right to decide whether or not I was insulted." She said that defendant didn't do anything harmful to her and that "[she] was not allowed to decide whether [she] was insulted. Which is insulting."

¶ 39    The trial court commented, "[I]t appears to me that more than domestic violence there is an anger issue." Defendant was sentenced to one-year conditional discharge and was ordered to undergo an anger management assessment and any recommended treatment. Defendant timely appealed.

¶ 40                                G. Decision in *Ward I*

¶ 41    We recognized that "[d]omestic battery based on physical contact of an insulting or provoking nature can be proven by facts and circumstances surrounding the defendant's conduct,

even where the victim denies being insulted or provoked or the victim refuses to cooperate." *Ward*, 2021 IL App (2d) 190243, ¶ 62. However, we stated that "there must be evidence presented from which a trier of fact could logically infer that the victim was insulted or provoked." *Id.* ¶ 56. We found "that the evidence was insufficient as a matter of law because there was no evidence to prove that Leslie was 'actually insulted by the actions of her husband.' " *Id.* ¶ 82.

¶ 42    In his opening brief in *Ward I*, defendant argued that there "was absolutely no evidence presented by the State's witnesses that Mrs. Ward was actually insulted by the actions of her husband." Defendant argued that the "contact in this case was more akin to a 'mere touching.' " Defendant cited *People v. Nichols*, 2012 IL App (4th) 110519, ¶ 42, in further arguing that, "[i]n the usual case[,] the insulting element of battery does not require proof by the victim's testimony that the contact was insulting or provoking. Rather, the trier of fact can make the inference from the victim's reaction at the time."

¶ 43    The State responded to defendant's argument as follows:

> "Defendant misapprehends the State's burden. The plain language of the battery statute defines the offense in terms of contact that insults or provokes the victim, not contact that injures the victim. [Citation.] The element of contact of an insulting or provoking nature does not require proof by, for example, the victim's testimony that the contact was insulting or provoking. [Citation.] Rather, 'a particular physical contact may be deemed insulting or provoking based upon the factual context in which it occurs.' [*People v.*] *Peck*, 260 Ill. 3d [812,] 814, see also, *People v. Fultz*, 2012 IL App (2d) 101101, ¶ 49 (even if the victim did not explicitly testify that he felt insulted or provoked by defendant's contact, *the trier of fact may take into account the context in which a defendant's contact occurred to determine whether the touching was insulting or provoking*); *People v. Wencher*, 2011

IL App (4th) 080619, ¶ 55 ("[*t*]*he victim does not have to testify he or she was provoked; the trier of fact can make that inference from the vicitm's reaction at the time*"); *People v. DeRosario*, 397 Ill. App. 3d 332, 334 [(2009)] (*contact can be insulting or provoking depending on the context, including the parties' relationship*)." (Emphasis added.)

¶ 44    In *Ward I*, we cited cases from every appellate court district for the proposition that, when a defendant is charged with battery or domestic battery based on insulting or provoking contact, the State must prove that the defendant's physical contact was insulting or provoking to the victim. *Ward*, 2021 IL App (2d) 190243, ¶ 50. We said that the "contact here, a push accompanied by the phrase, 'shut up,' without more is not a type of contact that automatically gives rise to an inference that the victim was insulted or provoked." *Id.* ¶ 67.

¶ 45    We discussed *People v. Williams*, 2020 IL App (4th) 180554, which was decided after the initial briefing in this case was completed. We disagreed with the majority in *Williams* that concluded that the "type of contact" governs whether the contact is "insulting or provoking." *Id.*, ¶ 52. We said that "if that were the case, we would not look to the context, the relationship of the parties, and the reaction of the victim at the time." *Id.* We noted that, in his special concurrence, Justice Turner stated that "[a]ny person would know that when defendant kicked [the victim] that was 'physical contact of an insulting or provoking nature' at a minimum and the jury was entitled to come to that conclusion." *Ward*, 2021 IL App (2d) 190243, ¶ 51.

¶ 46    In reaching our decision in *Ward I*, we stated that, "[j]ust as a defendant cannot be found guilty of battery based on 'bodily harm' without some form of physical pain or damage to the body of the victim, a defendant cannot be found guilty based on 'physical contact of an insulting or provoking nature with an individual' without some form of proof that the victim was insulted or provoked. *Id.*, ¶ 53. We further said:

"The Illinois Supreme Court decision in *People v. Hale*, 77 Ill. 2d 114, 32 \*\*\*
(1979), illustrates this point. In *Hale*, the defendant was charged with knowingly making
contact of an 'insulting or provoking nature' with a police officer engaged in the execution
of his official duties. [Citation.] The defendant's motion to dismiss for failure to state the
offense of aggravated battery was granted 'in order that the State might seek review of the
ruling on the aggravated battery charge.' [Citation.] The appellate court held that 'the
information was insufficient to charge aggravated battery because it did not allege that the
police officer suffered bodily harm.' [Citation.] Our supreme court reversed the appellate
court, explaining that the Criminal Code of 19161 identifies two alternative types of
misconduct that can be defined as battery:

> ' 'A person commits battery if he intentionally or knowingly without legal
> justification and by any means, (1) causes bodily harm to an individual or (2) makes
> physical contact of an insulting or provoking nature with an individual.' [Citation.]'
> [Citation.]

The supreme court notes that the Criminal Code provides in section 12-4 that the
act of battery will constitute aggravated battery, a Class 3 felony, in certain enumerated
situations, including the following:

'(b) A person who, in committing a battery either:

(6) Knows the individual harmed to be a peace officer \*\*\* so engaged in the
execution of any of his official duties including arrest or attempted arrest.' [Citation]

The court explained that the issue before it was whether, 'under section 12-4(b)(6),
insulting or provoking physical contact knowingly inflicted upon a police officer engaged
in the execution of his duties constituted aggravated battery or whether only battery

resulting in bodily harm to the officer comes within [the] statute. [Citation.] The court noted that the appellate court districts were 'not in harmony.' [Citation.] Citing *People v. Meints*, 41 Ill. App. 3d 215, 355 *** (1976), the court concluded that the words 'battered' and 'harmed' in the aggravated battery statute do not refer to the technical 'meanings of 'battery' and 'harm' in the battery statute.' [Citation.] The court stated that 'all three words ['assaulted,' 'battered,' and 'harmed;] were used synonymously, and, consequently, either of the alternative acts of battery will satisfy section 12-4(b)(6). [Citation.] The court noted that its conclusion was reinforced 'by its compatibility with the apparent legislative purpose to afford additional protection to those in positions of authority.' [Citation.] 'Since a battery is committed *upon ordinary persons* by either causing bodily harm or by insulting or provoking physical contact, consistency would seem to require that both forms of misconduct would constitute aggravated battery *when committed upon those in authority*.' [Citation.]

We reject the majority analysis in *Williams*. Were we to accept that reasoning, cases like *DeRosario* would not result in conviction, because the nature of the contact was not insulting or provoking. It was the context along with the victim's reaction at the time that made the contact insulting or provoking." (Emphasis in original). *Id.* ¶¶ 53-55.

¶ 47 We agreed with the State that the victim does not have to testify that he/she was insulted or provoked by a defendant's physical contact. However, we said that there must be evidence presented "from which a trier of fact could logically infer that the victim was insulted or provoked." We found "that the evidence was insufficient as a matter of law because there was no evidence to prove that Leslie was 'actually insulted by the actions of her husband.' " *Id.* ¶ 82. In her dissent, Justice Zenoff agreed with our interpretation of the domestic battery statute:

"I agree with the majority's interpretation of the domestic battery statute [citation] insofar as the majority holds that (1) there must be evidence from which the trier of fact can logically infer that the victim was insulted or provoked, (2) domestic battery based on physical contact of an insulting or provoking nature can be proved by acts and circumstances surrounding the defendant's conduct, even where the victim denies being insulted or provoked, and (3) there are certain types of contact—such as being spat upon or having a substance thrown on an individual—that allow for an inference that the victim was insulted or provoked. I disagree that, in those cases in which the inference of being insulted or provoked is not available—or where the victim either does not testify that he or she was insulted or provoked or denies being insulted or provoked—the State's proof must include evidence of the victim's emotional reaction to the contact." *Id.* ¶ 93.

¶ 48    Justice Zenoff believed that, "where the victim denies at trial that he or she was insulted or provoked, that denial goes to the weight and credibility that the trier of fact wishes to give the State's otherwise sufficient evidence." *Id.* ¶ 88. In response, we noted that "how Leslie Ward appeared or reacted after the push would have been relevant." *Id.* ¶¶ 80, 65. We stated that we were not concluding "that in every case the State must include evidence of the victim's emotional reaction. In this case, given the harmless nature of the contact, where all of the competent evidence showed that Leslie was not offended in any way, the State's argument was based on pure speculation."

¶ 49    We stated that "having reviewed the competent evidence in a light most favorable to the State, we find that the 'evidence overwhelmingly favored defendant such that the jury could not have concluded otherwise.' " *Id.* ¶ 83 (quoting *People v. Rascher*, 223 Ill. App. 3d 847, 854 (1992)).

¶ 50      The State filed a Petition for Rehearing on July 26, 2021, citing *People v. Williams*, 2020 IL App (4th) 180554, for the proposition that "it was for the jury to determine if the nature of the contact would be insulting or provoking regardless of whether or not there was evidence of the victim's reaction." The defendant responded by filing a *pro se* motion to disqualify Kane County State's Attorney Jamie Mosser and the State's Attorneys Appellate Prosecutor, alleging that while Mosser was still in private practice, she provided defendant "legal advice, assisting in forming the brief and the rebuttal to the State's brief."[2] We denied the State's petition for Rehearing and Motion to File and Amended Petition for Rehearing. We denied defendant's motion to strike the State's Petition for Rehearing and Motion to Disqualify Counsel as moot. Justice Zenoff dissented from the order denying the State's Petition for Rehearing and concurred in denying "the remaining issues as moot."

¶ 51      The supreme court denied the State's Petition for Leave to Appeal and directed us to vacate our judgment in *Ward I* and consider it's opinion in *People v. Davidson*, 2023 IL 127538, "on the issue of whether the trial court erred in denying defendant's motion for a directed verdict, and determine if a different result is warranted." We vacated our judgment in *Ward I* and, on our own motion, we ordered the parties to file supplemental briefs on the effect of *Davidson* "on the issue of whether the trial court erred in denying defendant's motion for a directed verdict."

¶ 52                                         II. ANALYSIS

¶ 53      Defendant raises the following issues on appeal: (1) whether defendant's case was improperly assigned to a judge outside the 16th Judicial Circuit; (2) whether the trial court erred in denying defendant's motion for a directed verdict; (3) whether the trial court erred in denying a

---

[2] Mosser was elected on November 3, 2020. The defendant's reply brief was filed on July 27, 2020.

modified version of the Illinois Pattern Jury Instructions for the offense of domestic battery; (4) whether the State failed to prove defendant guilty of domestic battery based on making contact of an insulting or provoking nature. We address each argument in turn.

¶ 54                              A. Assignment of an Ogle County Judge

¶ 55    We rejected defendant's argument that the assignment of a judge outside the 16th Judicial Circuit denied him a fair trial from the outset. We reaffirm our holding. *Ward*, 2021 IL App (2d) 190243, ¶ 42.

¶ 56                              B. Supplemental Briefs

¶ 57    The supreme court has directed us to consider the effect of its opinion in *People v. Davidson*, 2023 IL 127538 "on the issue of whether the trial court erred in denying defendant's motion for a directed verdict, and determine whether a different result is warranted."

¶ 58    When, pursuant to a supervisory order, the supreme court remands a case for reconsideration in light of a recent decision, it does not necessarily mean to imply that a different result is warranted. The supreme court expects the appellate court "to exercise its independent judgment." *People v. Phillips*, 217 Ill. 2d 270, 280 (2005).

¶ 59    Both parties have submitted supplemental briefs. Defendant, *pro se*, argues that, even if this court "erred in applying a subjective standard," we should continue to find that the trial court erred when it barred consent as a defense. Defendant argues that "the jury should've been allowed to determine whether Mrs. Ward consented to being moved out of the way." Defendant did not preserve this argument in his opening brief, therefore it is forfeited pursuant to Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1., 2020). *People v. Haissig*, 2012 Ill. App (2d) 110726, ¶ 17. Forfeiture aside, we agree with the trial court's ruling that consent is generally not a defense to the offense of battery. *People v. Ford*, 2015 IL App (3d) 130810, ¶¶ 21-28. Furthermore, defendant

was not prejudiced by the trial court's ruling. As the trial court noted while ruling on defendant's motion for a new trial, Leslie Ward was permitted to testify that she was not insulted or provoked. She even testified that she did not find the touching to be offensive.

¶ 60 Section II of defendant's brief is entitled, "Due Process Errors." In this section, defendant discusses unpreserved evidentiary errors. In *Ward I*, we identified evidence that should not be considered in ruling a motion for a new trial: (1) it is generally improper for a police officer to give his opinion that a defendant committed the offense (*Ward*, 2021 IL App (2d) 190243, ¶ 63; (2) Barbara Stilling's testimony regarding her "feeling" about what occurred was not relevant to any issue in the case (*Id.* ¶ 64); (3) Sgt. Carbray's testimony that defendant "is a bully who creates a lot of issues and tries to manipulate people (*Id.* ¶69; (4) Sgt. Carbray's testimony that, under the Domestic Violence Act, he did not have discretion not to make an arrest (*Id.* ¶ 70); (5) testimony of Officer Hann and Sgt. Carbray that police officers sometimes sign complaints in domestic violence cases because the victim is reluctant for various reasons to sign a complaint (*Id.* ¶ 71); and (6) following Sgt. Carbray's testimony regarding responding to a firebombing at defendant's home and another call regarding a loud helicopter, the State elicited the following testimony on redirect:

> "PROSECUTOR: Was there an individual ultimately arrested for that fire bombing of the defendant's residence?
>
> CARBRAY: Yes, there was.
>
> PROSECUTOR: On each and every occasion that you responded to the defendant in the past, as asked on cross examination, was he arrested every single time?
>
> CARBRAY: No, he was not."

We stated that "this testimony implied that defendant had committed prior offenses. This, combined with Carbray's testimony that the arrest was 'for the safety and protection of the victim,' leads to an improper inference that Leslie needed protection from defendant, despite her testimony that he has 'never hurt her.' " *Id.* ¶ 74. Defendant misunderstands our reasons for addressing these areas of objectionable evidence. Both trial courts and reviewing courts should consider only competent evidence when ruling on and reviewing the denial of a motion for directed verdict. "Competent evidence is evidence that is admissible and relevant on the point in issue." 23 C.J.S. *Criminal Procedure and Rights of Accused* § 1049 (citing *Bruton v. United States*, 391 U.S. 123 (1968).

There is a presumption that the trial court considered only competent evidence and "that presumption can be overcome only where the record affirmatively shows the contrary." We have again, carefully reviewed the record and find no indication that the trial court considered incompetent evidence in denying defendant's motion for a directed verdict.

¶ 61    Section III of defendant's supplemental brief, "Reasonable Doubt," is an effort to have this court reweigh the evidence. We reject defendant's argument. In examining a sufficiency of the evidence claim, we view the evidence in the light most favorable to the State to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *People v. Collins*, 106 Ill. 2d 237, 261 (1985). The jury's determination regarding credibility of the witnesses and inferences to be drawn from the evidence are given great deference. *People v. McLaurin*, 184 Ill. 2d 58, 79 (1998). "A criminal conviction will not be set aside on review unless the evidence is so improbable or unsatisfactory that a reasonable doubt of the guilt of the defendant remains." *Id.* (citing *People v. Smith*, 177 Ill. 2d 53, 73 (1997)).

¶ 62   Defendant next argues that the Geneva Police officers were "Prosecuting a Vendetta" against him. He argues that Sgt. Carbray's calling defendant a "bully" in open court should have resulted in a directed verdict. Defendant cites no authority for this argument, resulting in forfeiture. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 63   Finally, defendant argues that his prosecution is illegal because the current Kane County State's Attorney, Jamie Mosser, participated in drafting defendant's opening brief and reply brief and "continued to provide legal strategies up and until she was elected Kane County State's Attorney on November 3, 2020." Ms. Mosser's name does not appear on any of the briefs or pleadings in the appellate or common law record. On appeal, defendant was represented by attorney Rachel Hess until she was granted leave to withdraw on April 12, 2021. Defendant has been proceeding *pro se* since that date.

¶ 64   Defendant first raised the conflict of interest issue in a motion to disqualify counsel filed on July 26, 2021, shortly after the State filed its petition for rehearing on that same date. The State filed a motion for leave to file an amended petition for rehearing. In its motion, the State acknowledged that a "conflict exists with Kane County State's Attorney Jamie Mosser and the Kane County State's Attorney's Office, however, they were inadvertently referenced in the People's Petition due to a scrivener's error. No one from the Kane County State's Attorney;s Office had input into the drafting of the People's Petition for rehearing." On July 30, 2021, we denied the State's Petition for rehearing and motion for leave to file an amended petition. We denied defendant's motion to disqualify counsel and motion to strike the State's petition for rehearing as moot. In his supplemental brief, defendant cites section 4.01(a) of the State's Attorney's Appellate Prosecutor Act" (SAAP), which provides:

"The Office and all attorneys employed thereby may represent the People of the State of Illinois on appeal in all cases which emanate from a county containing less than 3,000,000 inhabitants, when requested to do so and at the direction of the State's Attorney, otherwise responsible for prosecuting the appeal, and may, with the advice and consent of the States Attorney prepare, file and argue such appellate briefs in the Illinois Appellate Court and, when requested and authorized to do so by the Attorney General, in the Illinois Supreme Court." 725 ILCS 210/4.01 (West 2020).

¶ 65    Defendant does not dispute that SAAP had the authority and was responsible for prosecuting this appeal. No conflict existed between SAAP and State's Attorney Mosser until she was elected and sworn in as Kane County State's Attorney several months after defendant's reply brief was filed. Defendant cites *People v. Courtney*, 288 Ill. App. 3d 1025, 1034 (1997) for the proposition that "no sitting state's attorney can direct the prosecution against a former client."

¶ 66    In *People v. Courtney*, the defendant's initial trial attorney, Michael Kick, who made several appearances and filed numerous documents, was the appointed State's Attorney for Kankakee County. Despite the recognition of a conflict of interest and the acknowledged "necessity of having a special prosecutor appointed," the State was represented by Kick's Assistant State's Attorney. The Assistant State's Attorney said, "And then for a while because we thought the [Attorney General] may be coming in. He is not coming in. He is only supervising the case. We are ready for trial." *Id.* at 1031. The defendant's attorney did not object and raised the conflict of interest issue for the first time in his motion for a new trial. The appellate court rejected the State's waiver argument and found that a *per se* conflict existed. The appellate court noted that the State's Attorney "controls the internal operations of his office," citing 55 ILCS 5/3-9001 *et seq.*

(West 1994). "The State's Attorney is responsible for the professional conduct and acts of his or her assistants." *Id.* at 1034 (citing *People v. Dread*, 27 Ill. App. 3d 106, 112 (1975).

¶ 67     *Courtney* does not support defendant's argument. The prosecution of this appeal was initiated while Joseph McMahon served as Kane County State's Attorney. Defendant's reply brief was filed several months before Jamie Mosser became State's Attorney. Defendant raised the conflict issue for the first time on July 26, 2021, and defendant does not allege that Mosser has participated *in any way*, in the prosecution of this appeal. We reject defendant's argument that he is a victim of "[a]n [i]llegal [p]rosecution."

¶ 68     The State points out that defendant's supplemental brief includes additional arguments unrelated to the impact of *Davidson* on whether the trial court erred in denying defendant's motion for a directed verdict. The State also point out that defendant did not raise any of these issues in his opening brief and therefore they are forfeited. Forfeiture is a limitation on the parties and not the reviewing court. We may overlook forfeiture where necessary to obtain a just result or maintain a sound body of precedent. *Wilson v. Humana Hospital*, 399 Ill. App. 3d 751, 757 (2010). We chose to address defendant's forfeited arguments because of the unique posture of this case. When we issued our opinion in *Ward I*, existing precedent required that the State prove that the victim was in fact insulted or provoked, either by direct or circumstantial evidence, including the parties' relationship. Justice Zenoff's dissent stated that "there must be evidence from which the trier of fact can logically infer that the victim was insulted or provoked." *Ward*, 2021 IL App (2d) 190243, ¶ 87. In its response brief, the State argued that "the plain language of the battery statute defines the offense in terms of contact that insults or provokes the victim, not contact that injures the victim." State's brief ¶ 19. The State, citing *People v. Nichols*, 2012 Ill App (4th) 110519, argued that "the element of contact of an insulting or provoking does not require proof by, for example,

the victim's testimony that the contact was insulting or provoking." *Id.* In its Petition for Leave to Appeal to the supreme court, the State failed to mention that, before this court, the State agreed with our interpretation of the domestic battery statute. Contrary to the State's argument in its petition, this court did not say that a "subjective standard" applies to a determination of whether the State has proven that the contact was "insulting or provoking." Defendant has not argued that the State has forfeited its argument that it was not required to prove Leslie Ward was "insulted or provoked." The supreme court has directed us to consider the effect of *Davidson* on the issue of whether the trial court erred in denying defendant's motion for a directed verdict. We must follow the supreme court's mandate. See *Price v. Philip Morris, Inc.*, 2015 IL 117687, ¶¶ 54-55.

¶ 69    The State argues that applying the supreme court's holding in *Davidson*, "when the evidence is viewed in the light most favorable to the prosecution, a rational trier of fact could have found that defendant made physical contact of an insulting or provoking nature." The State argues that defendant's argument that there were inconsistencies in the witnesses' testimony was for the jury to resolve. The State argues that applying the *Collins* standard, a rational trier of fact could have found that defendant made contact of an insulting or provoking nature with his wife and therefore the trial court did not err in denying defendant's motion for a directed verdict.

¶ 70                              C. Impact of *Davidson*

¶ 71    In *Davidson*, the defendant was an inmate at the Montgomery County Jail. Following a court appearance, the defendant was upset with what took place in court and was "screaming and swearing." After being told by a corrections officer to calm down, defendant refused. The defendant pushed the officer in the chest, causing him to step backwards. The defendant was charged with aggravated battery to a corrections officer by making contact of an insulting or provoking nature "in that you pushed him in the chest with your hands." Davidson was convicted

following a jury trial. On appeal, he argued that his contact with the officer was merely a reaction and the evidence "failed to reveal that the officer was insulted or provoked by defendant's actions." *People v. Davidson,* 2021 IL App (5th) 190217-U, ¶ 15. The appellate court affirmed, holding that it is not necessary that the victim testify that he was insulted or provoked. "The trier of fact may consider the context of defendant's contact when determining whether the contact was insulting or provoking." *Id.* (citing *People v. Fultz*, 2012 IL App (5th) 101101, ¶ 49. The supreme court granted defendant's petition for leave to appeal. Davidson argued that the evidence failed to prove that "Officer Stitt subjectively found the physical contact insulting or provoking." *Davidson*, 2023 IL 127538, ¶ 13. Davidson relied on our decision in *Ward I* to support his argument. *Id.*, ¶ 19. The supreme court rejected Davidson's argument, stating:

> "We find the clear and unambiguous language of section 12-3(a) of the Code demonstrates that the question of whether the contact is insulting or provoking is an objective inquiry. The use of the noun 'nature' after the adjectives 'insulting' and 'provoking' means that those terms describe the requisite 'nature' of the contact, taking it outside the scope of the victim's subjective view. The plain meaning of 'nature' in this context reflects an intent to look outside the victim's viewpoint and to that of a reasonable person's perspective. Put another way, it is the nature of the contact, not the actual impact on the victim, that must be established. Consequently, we hold that the trier of fact is asked to determine whether a reasonable person under the circumstances would find the physical contact insulting or provoking in nature." *Id.* ¶ 16.

¶ 72    In *Ward I*, both the majority and the dissent agreed that the domestic battery statute required "evidence from which the trier of fact can logically infer that the victim was insulted or provoked." *Ward*, 2021 IL App (2d) 190243, ¶ 93 (Zenoff dissent). Justice Zenoff also pointed out that, in the

trial court, the state argued "it is *only* the nature of the act that determines whether a defendant's conduct is insulting or provoking." *Id.* ¶ 89. Justice Zenoff noted that, on appeal, "the State abandons that argument here and instead acknowledges that 'a particular physical contact may be deemed insulting or provoking based upon the factual context in which it occurs.' " *Id.* (Emphasis in original).

¶ 73    In *People v. Davidson*, the supreme court stated that, in *Ward I*, "the court determined that focusing on the nature of the contact under a reasonable person standard precluded a consideration of the context in which the contact occurred." 2023 IL 127538, ¶ 19 (citing *Ward*, 2021 IL App (2d) 190243, ¶ 52). With respect, this is what we said in our supreme court's cited section of *Ward I*:

> "We disagree with the majority in *Williams* that it is the 'type of contact' that governs whether contact is 'insulting or provoking.' If that were the case, we would not look to the context, the relationship of the parties, and the reaction of the victim at the time. As the First District stated in *People v. d'Avis*, 250 Ill. App. 3d 649, 657 *** (1993), '[W]hat may be an innocent touching in one instance, may be interpreted quite differently in a different set of circumstances." [Citation.] In *DeRosario*, the physical contact was minor; the defendant's knee touched the victim's back and hip while he sat behind her in a smoking lounge. [Citation.] The 'contact occurred in the context of a failed relationship,' and the defendant had 'been stalking' the victim. [Citation.]"

¶ 74    In *Ward I*, we did consider the context in which the contact occurred. We relied on established precedent that required proof from which a rational fact finder could find that Leslie Ward was insulted or provoked, when defendant pushed her. In *Davidson*, the supreme court overruled decades of precedent that required that the State prove the victim was insulted or

provoked. That precedent included *People v. Hale*, 77 Ill. 2d 114, 117-18 (insulting or provoking contact inflicted on a police officer engaged in the line of duty constitutes aggravated battery).

¶ 75    In *People v. Davidson*, the supreme court held that the State is not required to "prove the victim was insulted or provoked by the contact." 2023 IL 127538, ¶ 22. The court overruled: *People v. Fultz*, 2012 IL App (2d) 101101; *People v. Wrencher*, 2011 IL App (4th) 080619; and *People v. Dunker*, 217 Ill. App. 3d 410 (1991) "to the extent those decisions can be read as requiring the State to prove the victim was insulted or provoked." While we cited these cases in *Ward I* to support our interpretation of the statutory language, these few cases were not the only cases that reached the same conclusion the majority reached in *Ward I*. See *People v. Green*, 2011 IL App 091123, ¶ 23 ("The domestic battery statute's plain language defines the offense in terms of contact that insults or provoked the victim, and the contact does not need to cause physical injury"); *People v. Hunter*, 2016 IL App (1st) 142611-U ("the fact finder can make an inference that the victim was provoked based on the victim's reaction, and the victim does not have to testify that he or she was provoked" (citing *People v. Hale*, 2012 IL App (4th) 100949, ¶ 31)); *In re Stevon B.*, 2013 IL App (1st) 112133, ¶ 10; *People v. Craig*, 46 Ill. App. (3d) 1058, 1060 (1977) ("This evidence demonstrates a lack of intent to provoke or insult the complainant"); and *People v. Nichols*, 2012 IL App (4th) 110519, ¶ 44 (victim does not have to testify that he or she was insulted or provoked as "trier of fact can make that inference from the victim's reaction at the time"). The First District stated in *People v. Ramirez*, "[o]ur review of relevant precedent reveals that the appropriate question is whether the evidence was sufficient to establish that the contact was insulting or *provoking to the victim*." (Emphasis added.) 2020 IL App (1st) 171000-U. Now, under *People v. Davidson*, the appropriate question is "whether a reasonable person under the

circumstances would find the physical contact insulting or provoking in nature." 2023 IL 127538, ¶ 16 (citing *Williams*, 2020 IL App (4th) 180554, ¶ 50)).

¶ 76    We believe that our decision in *Ward I* was consistent with settled precedent and faithful to the doctrine of *stare decisis*, which "expresses the policy of the courts to stand by precedents and not to disturb settled points." *People v. Colon*, 225 Ill. 2d 125, 145 (2007) (quoting *People v. Caballes*, 221 Ill. 2d 282, 313 (2006)). Any departure from *stare decisis* must be "specifically justified" and "[t]hus, prior decisions should not be overruled absent 'good cause' or 'compelling reasons.' " *Id.* at 146. Respectfully, in *People v. Davidson*, our supreme court did not provide a discussion of the doctrine of *stare decisis*. The court overruled not only the cases it mentioned, but every appellate court case (with the lone exception of *Williams*) that has considered what the State must prove, i.e., that the contact was insulting or provoking to the victim. We again note that the parties and dissenting Justice Zenoff all agreed with the majority interpretation of the statute.

¶ 77    "A motion for directed verdict asserts only that as a matter of law the evidence is insufficient to support a finding of guilty." *People v. Withers*, 87 Ill. 2d 224, 230 (1981); 725 ILCS 5/115-4(k) (West 2018). In ruling on a motion for a directed verdict, the trial judge considers "only whether a reasonable mind could fairly conclude the guilt of the accused beyond a reasonable doubt, considering the evidence in a light most favorable to the State." *People v. Connolly*, 322 Ill. App. 3d 905, 914 (2001). In ruling on "a motion for a directed verdict, the court can consider only competent evidence ." *Hunter v. Troup*, 315 Ill. 293, 298 (1924). Review of a ruling on a motion for    directed verdict presents a question of law which we review *de novo*." *Connolly*, 322 Ill. App. 3d at 917.

¶ 78    Having reviewed the competent evidence in a light most favorable to the State, we conclude that the trial court, under the statutory interpretation articulated in *Davidson*, did not err in denying

defendant's motion for a directed verdict. As the trial court indicated, when defendant arrived on the scene of the accident, one of the first things he did was verbally assault a police officer. When Leslie Ward tried to intervene to prevent defendant from further trouble, he supposedly yelled at her to shut up and pushed her our of his way, before continuing to argue with Sgt. Carbray. A rational jury could find defendant's contact with Leslie Ward was "insulting or provoking," despite her protest against defendant's arrest.

¶ 79                               D. Modified Jury Instructions

¶ 80    At the close of the evidence, defense counsel proposed modified Illinois Pattern Jury Instruction 11.11 and 11.12 (Definition and Issues in Domestic Battery). We did not address this issue in *Ward I* because our holding on the directed verdict issue was dispositive. The modified instructions read as follows:

"IPI – 11.11 – Modified Definition of Domestic Battery

A person commits the offense of domestic battery when he intentionally or knowingly and by any means makes physical contact of an insulting or provoking nature with any family or household member. Notwithstanding the foregoing, a person does not commit the offense of domestic battery if the physical contact with the family or household member is what otherwise would be a minor sort of offensive touching.

IPI – 11.12 – Modified Issues in Domestic Battery

To sustain the charge of domestic battery, the State must prove the following propositions: First Proposition: That the defendant intentionally or knowingly made physical contact of an insulting or provoking nature with Leslie Ward, and Second Proposition: That the physical contact with Leslie Ward was greater than what otherwise would be a minor sort of offensive touching. If you find from your consideration of all the

evidence that each of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty. If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

¶ 81 We review a trial court decision not to give a non-IPI instruction for abuse of discretion. *People v. Garcia*, 165 Ill. 2d 409, 432 (1995) ("[A] judge's refusal to issue a nonpattern jury instruction to the jury will not be reversed on appeal absent an abuse of discretion"). We agree with the State that defendant's proposed instruction is not an accurate statement of the law either previously or presently Previously, in the context of the alleged contact, even a minor touch can be insulting or provoking. *DeRosario*, 397 Ill. App. 3d at 334-35 ("conduct might be completely innocent in another context"). Presently, it is now inconsistent with the holding in *Davidson.* In the context of the alleged contact, even a minor touch can be insulting or provoking. *DeRosario*, 397 Ill. App. 3d at 334-35 ("conduct might be completely innocent in another context").[3] We find no abuse of discretion by the trial court in denying defendant's modified instructions.

¶ 82                              E. Reasonable Doubt

---

[3]We recognize that, in *Davidson,* our supreme court stated that "[t]he plain meaning of 'nature' in this context reflects an intent to look outside the victim's viewpoint and to that of a reasonable person's perspective. Put another way, it is the nature of the contact, not the actual impact on the victim, that must be established." 2023 IL 127538, ¶ 16. However, the court went on to state that that *d'Avis*, *Peck*, and *DeRosario*, "all stand for the proposition that the context must be considered when determining if the contact was insulting or provoking in nature, which is true under the reasonable person standard." *Id.* ¶ 21.

¶ 83    Having concluded that the trial court did not err in denying defendant's motion for a directed verdict, we need not rehash all of our analysis on the issue of whether the State proved that defendant made contact of an "insulting or provoking" nature with a family member. Defendant's argument focuses on what Leslie Ward "herself perceived." While Leslie's testimony was clearly relevant, under the reasonable person standard articulated in *Davidson*, the focus is "the nature of the contact, not the actual impact on the victim, that must be established." *Davidson*, 2023 IL 127538, ¶ 16. Defendant's brief again points out the inconsistencies in the testimony between the two civilian witnesses and the police officers. Defense counsel argued these inconsistencies during closing argument. "Where a criminal conviction is challenged based on insufficient evidence, a reviewing court, considering all of the evidence in the light most favorable to the prosecution, must determine whether any rational trier of fact could have found beyond a reasonable doubt the essential elements of the crime." *People v. Brown*, 2013 IL 114196, ¶ 48. We will not reweigh the evidence.

¶ 84    Viewing the evidence in a light most favorable to the State, we hold that the evidence was sufficient to sustain the State's burden of proof.

¶ 85                                    III. CONCLUSION

¶ 86    For the foregoing reasons, we affirm defendant's conviction.

¶ 87    JUSTICE HUTCHINSON, specially concurring.

¶ 88    I was not on the panel in *Ward I*. I replaced Justice Zenoff after her assignment to the Fourth District Appellate Court when this case was reversed and remanded. Although I concur in the result, I wish to distance myself from the comments made in paragraphs 72-76. *Supra* ¶¶ 72-76. In that section, the majority incorrectly criticizes our supreme court's holding in *Davidson* and mischaracterizes the nuances of Justice Zenoff's conditional agreement with the majority's

position in *Ward I*. Justice Zenoff explained *at length* not only that domestic battery cases are different, but that "[w]ithout a reasonable-person standard, we would sanction absurd results." *Ward I*, 2021 IL App (2d) 190243, ¶ 110. I agree with the views expressed in Justice Zenoff's dissent, which I would note, was cited with approval when her position was ultimately vindicated by a majority of our supreme court (*Davidson*, 2023 IL 127538, ¶ 18 (citing *Ward I*, 2021 IL App (2d) 190243, ¶ 102 (Zenoff, J., concurring in part and dissenting in part)), which then overruled *Ward I* explicitly. See *id*. ¶ 19 ("To the extent the appellate court in *Ward* held that the inquiry is a subjective question, that decision is overruled.").

¶ 89 There seems to be some tension underlying the majority's discussion and application of *Davidson* above. For me, this has always been a straightforward sufficiency-of-the-evidence case, and while how Leslie felt should always be a consideration, it has never been dispositive. I believe a reasonable person would have felt insulted or provoked by such alarming contact, particularly from an intimate partner, in public, in front of two police officers and the driver of the car from the accident with defendant's son. Independent witnesses observed the contact, meaning the trier of fact had more to rely on than the complainant's narrative, which is not always the case in domestic batteries. But, here, it was. And, after *Davidson*, nothing more need be said. Defendant was convicted after a trial where sufficient evidence established that he committed the charged offense. For these reasons, I specially concur.