2026 IL App (1st) 240728-U

No. 1-24-0728

Order filed January 14, 2026

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 23 MC1 192318 |
| | ) | |
| CHRISTIAN BROWN, | ) | Honorable |
| | ) | Daniel J. Gallagher, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Martin and Justice Lampkin concur in the judgment.

**ORDER**

¶ 1    *Held*:    Defendant's conviction for battery is affirmed where the evidence was sufficient to prove that he made physical contact of an insulting or provoking nature with an officer. Defendant's conviction for disorderly conduct is reversed and vacated as plain error where it was not a lesser-included offense of the charged offense of resisting and obstructing a peace officer.

¶ 2    Following a bench trial, defendant Christian Brown was found guilty of two counts of battery and one count of disorderly conduct. He was sentenced to six months' supervision. (Neither the court's oral pronouncement nor written order specified the count on which sentence was

imposed.) On appeal, defendant argues that the evidence was insufficient to prove that he committed a battery against an officer where the State did not establish that physical contact occurred, and any contact that did occur was inadvertent and not insulting or provoking in nature. Defendant also argues that his conviction for disorderly conduct should be vacated where it was not a lesser-included offense of the charged offense of resisting and obstructing a peace officer and, in finding defendant guilty of uncharged conduct, the trial court committed plain error. We affirm defendant's conviction for battery and reverse and vacate his conviction for disorderly conduct.

¶ 3     Defendant was charged by complaint with battery against Chicago police officer Alicia Gonzalez, alleging that defendant struck and squeezed Gonzalez's left arm causing bruising (720 ILCS 5/12-3(a)(1) (West 2022)) (count I); battery against Chicago police officer Sergio Cale, alleging that defendant struck Cale's right arm with defendant's left hand in an insulting and provoking manner (720 ILCS 5/12-3(a)(2) (West 2022)) (count II); assault against Chicago police officer Noah Clark, alleging that defendant clenched his fists and took a combative stance against Clark (720 ILCS 5/12-1(a) (West 2022)) (count III); and resisting and obstructing a peace officer, alleging that defendant "knowingly and intentionally" resisted the arrest effectuated by Clark (720 ILCS 5/31-1(a)(1) (West 2022)) (count IV).

¶ 4     At trial, Gonzalez testified that on August 25, 2023, at around 6 a.m., she and other officers responded to a call regarding a woman, Jasmine, who was afraid to enter her residence. Defendant was also at the scene and approached the officers "upset." Jasmine entered a vehicle, left, and then returned. Defendant "charged" at her, and Gonzalez placed herself between defendant and

Jasmine. Defendant touched Gonzalez "everywhere on [her] vest," "grabbed" her, and caused injuries.

¶ 5    Gonzalez was equipped with a body-worn camera (BWC) that filmed the events. The video was admitted and published at trial, but it is not included in the record on appeal. According to Gonzalez, the video showed that as Jasmine exited her vehicle and officers prepared to escort her into her residence, defendant charged toward Jasmine and grabbed Gonzalez. After that portion of the video was played, Gonzalez testified that defendant was "taken to the ground" by Clark, "flail[ing] his arms." Clark took about one minute to arrest defendant because defendant would not "give his other hand" for the arrest.

¶ 6    Gonzalez's injuries were photographed at the police station about an hour after the incident. A photograph was admitted and published at trial. The photograph, provided in the record on appeal, depicts a red bruise near the upper portion of Gonzalez's left arm.

¶ 7    On cross-examination, Gonzalez testified that prior to the call at 6 a.m., she responded to an earlier call from defendant. Defendant was bleeding from his head from being hit with a bottle. Gonzalez could not recall if defendant stated that he was hit by his girlfriend. The individual who purportedly hit defendant could not be located. When asked if Jasmine was known as Jonyla Harrison, Gonzalez stated that the individual who identified herself as Jasmine refused to provide officers with identification.

¶ 8    While responding to the 6 a.m. call, Gonzalez attempted to stop defendant from approaching Jasmine and "commit[ing] a battery." Gonzalez placed her arms on defendant because he was "flailing" and "charging" toward Jasmine. The interaction between defendant and Gonzalez

lasted a "matter of seconds," but defendant "pushed" Gonzalez, her vest became undone, and she sustained a bruise. Gonzalez did not inform other officers on scene that she had been injured.

¶ 9       Cale testified that when he arrived on scene, defendant approached in an "aggressive" manner and "touched" Cale. The State replayed Gonzalez's video. According to Cale, the video showed that defendant charged at Jasmine before being apprehended by Clark, which took approximately 30 seconds.

¶ 10       On cross-examination, Cale testified that defendant made contact with Cale while "lunging toward" Jasmine and "pulling away" from Cale and Gonzalez. Cale did not sustain injuries. Defendant did not direct threats toward Cale or threaten to batter Jasmine.

¶ 11       On redirect examination, Cale testified that he attempted to stop defendant from approaching Jasmine because "it appeared that [defendant] was going to batter her."

¶ 12       Clark testified that he observed Gonzalez and Cale "struggling" with defendant. Defendant was "aggressive, combative, [and] highly irritable." Defendant struck Gonzalez and Cale, and Clark "rushed to their aid." Defendant was "increasingly hostile" and "balled his fists." Clark immediately "put [his] arms" around defendant, who was "moving around [and] spinning."

¶ 13       Clark was equipped with a BWC that filmed the events. The video was admitted and published at trial. The video, provided in the record on appeal, depicts defendant rapidly approaching Jasmine, Gonzalez, and Cale while aggressively gesturing. Gonzalez and Cale struggle with defendant and hold him back from approaching Jasmine. Gonzalez's vest is undone on the left side. Defendant remarks, "f*** you, white cracker" as he forcefully grabs Gonzalez's arms and removes her arms from his body. Cale still has his hands on defendant, and as defendant turns to face Cale, defendant's right elbow swings upward, nearly missing Cale's face. Then, while

facing Cale, defendant forcefully swings his left hand down, striking Cale's right arm. Clark then tackles defendant to the ground and attempts to handcuff defendant, who refuses to place his arms behind his back. Roughly 30 seconds later, Clark handcuffs defendant. Defendant continues to direct expletives at the officers.

¶ 14 Clark testified that it took approximately one minute to handcuff defendant due to defendant tensing his arms and trying to place his arms underneath his body.

¶ 15 On cross-examination, Clark testified that he "rushed" on scene because defendant "swung" at Cale. When Clark approached, defendant directed his attention at Clark and clenched his fists. After the altercation with Gonzalez and Cale, Clark grabbed defendant as defendant was turning away. Clark "ultimately" placed defendant into custody.

¶ 16 The trial court found defendant guilty of battery against Gonzalez and Cale (counts I and II) and not guilty of assault against Clark (count III). The court found the testimony credible and that defendant created a "heightened moment" when he approached the officers in a "very aggressive" manner in an attempt to "jump over the officers" to reach Jasmine. Regarding resisting and obstructing a peace officer (count IV), the court found that while the evidence did not support a conviction under that charge, defendant's actions created a "breach of peace," and therefore, the court found him guilty of the "lesser included" charge of disorderly conduct (720 ILCS 5/26-1(a)(1) (West 2022)).

¶ 17 Defendant was subsequently sentenced to 12 months' supervision.

¶ 18 Defendant filed a motion and amended motion to reconsider the finding of guilt and sentence and for a new trial. Specifically, defendant argued that the evidence was insufficient to prove him guilty of battery against Cale because Cale never testified that defendant struck Cale's

arm. Regarding disorderly conduct, defendant stated that he was "not raising any argument as to [him] being found guilty of disorderly conduct as a lesser included offense of resisting arrest but argues that the evidence was insufficient to find [defendant] guilty of *** disorderly conduct." Additionally, defendant requested that his sentence be reduced.

¶ 19     On April 1, 2024, the trial court denied the motion for a new trial but reduced defendant's sentence to six months' supervision.

¶ 20     On appeal, defendant first argues that the evidence was insufficient to prove that he committed a battery against Cale where the State did not establish that physical contact occurred, and any contact that did occur was inadvertent.

¶ 21     On a challenge to the sufficiency of the evidence, the relevant inquiry is " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. McLaurin*, 2020 IL 124563, ¶ 22 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This court will not retry the defendant. *People v. Nere*, 2018 IL 122566, ¶ 69. The trier of fact's role is to "assess the credibility of the witnesses, weigh the evidence presented, resolve conflicts in the evidence, and draw reasonable inferences from the evidence." *People v. Daniel*, 2022 IL App (1st) 182604, ¶ 102. A reviewing court will not substitute its judgment for that of the trier of fact as to those issues. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224-25 (2009).

¶ 22     The trier of fact need not "disregard inferences that flow normally from the evidence before it" or "search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." *People v. Jackson*, 2020 IL 124112, ¶ 70. Therefore, we "must allow all reasonable inferences from the record in favor of the prosecution." *People v. Givens*, 237 Ill. 2d

311, 334 (2010). A conviction will not be set aside unless "the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *People v. Bradford*, 2016 IL 118674, ¶ 12.

¶ 23 To prove defendant guilty of battery, the State needed to prove that defendant "knowingly without legal justification by any means *** ma[de] physical contact of an insulting or provoking nature with" Cale. 720 ILCS 5/12-3(a)(2) (West 2022). A defendant acts "knowingly" or with knowledge of "the nature or attendant circumstances of his or her conduct, described by the statute defining the offense, when he or she is consciously aware that his or her conduct is of that nature or that those circumstances exist" or "the result of his or her conduct, described by the statute defining the offense, when he or she is consciously aware that that result is practically certain to be caused by his conduct." 720 ILCS 5/4-5 (West 2022). Knowledge can be inferred from the surrounding facts and circumstances. *People v. Frazier*, 2016 IL App (1st) 140911, ¶ 23.

¶ 24 Viewing the evidence in the light most favorable to the State, a rational trier of fact could have found defendant guilty of battery. All three officers testified that defendant "charged" at them and Jasmine in an "upset," "aggressive," "combative," and "highly irritable" state. Cale testified that, during the struggle, defendant touched Cale while trying to escape from Cale's grasp. Clark also testified that defendant struck Cale. The trial court found the officers' testimony credible, a determination we will not reassess. *Siguenza-Brito*, 235 Ill. 2d at 224-25.

¶ 25 Furthermore, the officers' testimony is corroborated by Clark's BWC video. The video shows defendant rapidly approaching Jasmine and the officers in a heated state. Gonzalez and Cale restrict defendant from approaching Jasmine and engage in a struggle with defendant. Defendant directs expletives at the officers, and, while still in Cale's grasp, turns to face Cale. Defendant

swings his right elbow upward, nearly missing Cale's face, and forcefully swings his left hand down striking Cale's right arm while facing Cale. Construing the evidence in the light most favorable to the State, it was reasonable for the trier of fact to infer that defendant knowingly committed battery when he, in an aggressive state, deliberately struck Cale's arm while facing him after engaging in a struggle with Cale and Gonzalez. See *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004) (all reasonable inferences are viewed in the light most favorable to the prosecution).

¶ 26    Nevertheless, defendant argues that his conduct was not insulting or provoking in nature when any contact with Cale occurred while defendant attempted to extricate himself from the struggle.

¶ 27    In determining whether conduct is insulting or provoking in nature for purposes of battery, the "nature of the contact" rather than the "actual impact on the victim" is the focus. *People v. Davidson*, 2023 IL 127538, ¶ 16. Thus, courts use an objective standard to determine whether "a reasonable person under the circumstances would find the physical contact insulting or provoking in nature." *Id*. Moreover, "particular physical contact may be deemed insulting or provoking based upon the factual context in which it occurs" and "what may be an innocent touching in one instance, may be interpreted quite differently in a different set of circumstances." *People v. d'Avis*, 250 Ill. App. 3d 649, 651 (1993).

¶ 28    Defendant did not make contact with Cale to simply remove himself from Cale's grasp but, rather, "heightened" the situation. All three officers testified that defendant displayed a combative and aggressive demeanor as he attempted to approach Jasmine and this is corroborated on video. As stated, after being restricted from approaching Jasmine by Gonzalez and Cale, in a struggle with Cale, defendant's right elbow swings upward nearly missing Cale's face. Defendant then

forcefully swings his left hand down, striking Cale's right arm while defendant faces Cale and directs expletives at the officers. Therefore, it was a reasonable inference that defendant's conduct while Cale was attempting to restrict defendant's advancement toward Jasmine was not the "innocent touching" of a man trying to remove himself from a struggle, but instead was insulting or provoking. As such, the evidence established that defendant committed battery against Cale.

¶ 29   Next, defendant argues that his conviction for disorderly conduct must be vacated because it is not a lesser-included offense of the charged offense of resisting and obstructing a peace officer and, in finding defendant guilty of uncharged conduct, the trial court committed plain error. The State concedes the issue.

¶ 30   Defense counsel failed to object to the trial court's findings or include this claim in his posttrial motion. It is therefore forfeited. See *People v. Thompson*, 238 Ill. 2d 598, 612 (2010). However, defendant requests review under the plain error doctrine. Plain error review is applicable when a defendant establishes that a "clear or obvious error occurred" and either "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant" or the "error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." *Id*. at 613. Here, defendant argues that this claim is reviewable under the second prong of the plain error doctrine. Under plain error analysis, we must first determine whether any error occurred. *Id*.

¶ 31   A "defendant in a criminal prosecution has a fundamental due process right to notice of the charges brought against him." *People v. Kolton*, 219 Ill. 2d 353, 359 (2006). Therefore, a defendant may not be convicted of an uncharged offense "unless it is a lesser-included offense of the charged crime and the evidence adduced at trial rationally supports a conviction on the lesser-included

offense and an acquittal on the greater offense." (Internal quotations omitted.) *People v. Booker*, 2015 IL App (1st) 131872, ¶ 53. This is determined on a "case-by-case basis using the factual description of the charged offense in the indictment." *Kolton*, 219 Ill. 2d at 367.

¶ 32    In determining whether an uncharged offense is a lesser-included offense of a charged offense, courts use the charging instrument approach and consider whether "the description of the greater offense contains a 'broad foundation' or 'main outline' of the lesser offense" and whether the evidence at trial "rationally supports a conviction on the lesser offense." *People v. Johnson*, 2015 IL App (1st) 141216, ¶ 22. A court only proceeds to the second step if the uncharged offense is a lesser-included offense of a charged offense. *Id*. "Whether a charged offense encompasses another as a lesser-included offense is a question of law, which this court reviews *de novo*." *Kolton*, 219 Ill. 2d at 361.

¶ 33    The State charged defendant with resisting and obstructing a peace officer alleging that defendant "knowingly and intentionally" resisted the arrest effectuated by Clark. 720 ILCS 5/31-1(a)(1) (West 2022). To sustain a conviction for disorderly conduct, the State would have needed to prove that defendant "knowingly [did] any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace." 720 ILCS 5/26-1(a)(1) (West 2022).

¶ 34    Under the first step of the charging instrument approach, it cannot be said that the complaint's description of the elements of resisting or obstructing a peace officer contained a "broad foundation" or "main outline" of disorderly conduct. While defendant could have provoked a breach of the peace during his resisting arrest, in this case, the factual description in the complaint failed to reference any facts alluding to a breach of peace. The complaint merely stated that defendant resisted the arrest effectuated by Clark without mentioning any other actions taken by

defendant that would indicate a breach of peace. Therefore, from the language used in the complaint, it cannot be said that disorderly conduct is a lesser-included offense of resisting or obstructing a peace officer and we need not proceed to the second step. See *Johnson*, 2015 IL App (1st) 141216, ¶ 22. As such, the trial court erred by finding defendant guilty of disorderly conduct.

¶ 35    The Illinois Supreme Court has equated "second prong of plain-error review with structural error," requiring automatic reversal if such errors "erode the integrity of the judicial process and undermine the fairness of the defendant's trial." *Thompson*, 238 Ill. 2d at 613; *Johnson*, 2015 IL App (1st) 141216, ¶ 46. This court has determined that "[c]onvicting a defendant of an uncharged offense that is not a lesser-included offense of a charged offense violates the defendant's fundamental due process right to notice of the charges brought against him," and therefore constitutes second-prong plain error. (Internal quotations omitted.) *Johnson*, 2015 IL App (1st) 141216; ¶ 50; see also *Booker*, 2015 IL App (1st) 131872, ¶ 65. Thus, because the trial court erroneously convicted defendant of the uncharged offense of disorderly conduct, which was not a lesser-included offense of resisting or obstructing a peace officer, the conviction for disorderly conduct must be reversed.

¶ 36    For the foregoing reasons, we affirm defendant's conviction for battery and reverse and vacate his conviction for disorderly conduct.

¶ 37    Affirmed in part and reversed and vacated in part.